925 A.2d 702 (2007)
394 N.J. Super. 128
Rosalie Ann GRIFFITH, Plaintiff-Appellant,
v.
Mark Gerard TRESSEL, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 2007.
Decided June 25, 2007.
*704 Thomas J. Walsh, Cranford, argued the cause for appellant (Triarsi, Betancourt, Walsh & Wukovits, attorneys; Mr. Walsh, of counsel; Cynthia A. Cappel, on the brief).
Ronald N. Manos argued the cause for respondent (Forkin, McShane, Manos & Rotz, Cherry Hill, attorneys; Mr. Manos, on the brief).
Before Judges SKILLMAN, HOLSTON, JR. and GRALL.
The opinion of the court was delivered by
GRALL, J.A.D.
This appeal arises from a motion to modify the custody provisions of a final judgment of divorce entered by a court of this state four years before the motion was filed. Plaintiff Rosalie Ann Griffith contends that under New Jersey's Uniform Child Custody Jurisdiction and Enforcement Act (NJUCCJEA or Act), N.J.S.A. 2A:34-53 to -95, the Family Part lacked, or erred by exercising, jurisdiction over defendant Mark Gerard Tressel's post-judgment motion to transfer custody of the party's child. The appeal requires us to consider the scope of New Jersey's "exclusive, continuing jurisdiction" over a custody order entered by a court of this state, N.J.S.A. 2A:34-66, and the standards for declining that jurisdiction in favor of a more appropriate forum, N.J.S.A. 2A:34-71.
Plaintiff and defendant were married on November 5, 1994. Their only child was born in New Jersey on July 4, 1998. On April 24, 2001, they were divorced in Camden County. The final judgment incorporates their agreement to share legal custody; assign residential custody to plaintiff; permit plaintiff and the child to move to Maryland by the summer of 2001; and, until January 1, 2004, provide parenting time for defendant on alternate weekends and holidays and for two weeks during the summer. The parties agreed to postpone consideration of the parenting-time schedule beyond January 1, 2004, until a later date. They also agreed to designate New Jersey as the "home state pursuant to the Uniform Child Custody Jurisdiction Act [(UCCJA)]," which was repealed and replaced by the NJUCCJEA, effective December 13, 2004. L. 2004, c. 147, §§ 1, 44-45 (enacted September 14, 2004 to take effect ninety days after enactment).
The post-judgment motion that led to this appeal was filed on August 9, 2005 and is governed by the NJUCCJEA. N.J.S.A. 2A:34-94. Defendant sought primary residential custody. Plaintiff responded with a cross-motion asserting that Maryland, *705 the state in which she and the child have lived since June 2001, is the more appropriate forum. The judge denied plaintiff's motion and scheduled a plenary hearing on defendant's motion to change custody. Plaintiff filed a notice of appeal.[1]
Plaintiff and the child have lived in Maryland since June 2001, one month before the child's third birthday. Plaintiff's mother and stepfather also live in Maryland. The child first attended school in that state, and she has been evaluated by a speech therapist and an educational psychologist in Maryland, both of whom made recommendations for her development. She has been counseled by a psychologist in Maryland since March 2004.
Defendant continues to reside in New Jersey and exercises his parenting time in New Jersey. He does not identify any relationship that his child has with family members, friends or medical or education professionals in this state or any activities in which she is involved in New Jersey. The child's connections with this state are limited to her relationship with defendant and involvement with her parents' post-judgment litigation.
The first post-judgment order was entered on June 7, 2002. The judge of the Family Part ordered the parties and the child to participate in family therapy with a counselor in New Jersey. Although the order permitted the parties to return to court if the family therapy was unsuccessful, litigation was not resumed until March 2004.
On March 15, 2004, three months after the expiration of the parenting-time schedule incorporated in the parties' final judgment of divorce, plaintiff filed an order to show cause with the Family Part in Camden County seeking suspension of defendant's parenting time. She alleged that the child told a speech therapist that defendant hit her in the "stomach." The judge set a return date and ordered plaintiff to produce the speech therapist as a witness. He also ordered supervision of defendant's parenting time pending the return date.
On the return date, the judge scheduled a plenary hearing to resolve disputes about parenting time and ordered the parties to have Dr. Greenbaum, a psychologist who was treating the child in Maryland, determine whether defendant's parenting should be supervised pending that hearing. Dr. Greenbaum concluded that supervision was not necessary, and parenting time resumed in accordance with the schedule set by the judge.
In lieu of a plenary hearing, on April 23, 2004, the judge entered an order maintaining defendant's unsupervised parenting time in accordance with the temporary order and directing the parties to attend mediation in New Jersey and continue the child's therapy with Dr. Greenbaum.
Defendant subsequently filed a motion for additional parenting time. On July 20, 2004, the judge entered an order providing parenting time on alternate weekends and holidays and for three weeks during the summer.
According to plaintiff, in February 2005 Dr. Greenbaum contacted social services in Maryland to relay the child's report that defendant had kicked her in the shins, which the Maryland authorities referred to the Division of Youth and Family Services in New Jersey (DYFS). Plaintiff provides *706 no documents indicative of the referral or any action taken.[2]
In April 2005 plaintiff filed a complaint for custody and visitation with a court in Maryland. On June 24, 2005, the Maryland court dismissed that complaint on defendant's motion. There is no indication of any communication between the Maryland court and the judge of the Family Part.
On June 25, 2005, the child returned to Maryland after spending a week with defendant. She subsequently told her mother, her grandmother and Dr. Greenbaum about additional abuse. A complaint was filed with DYFS on July 1, 2005. Following an investigation, which plaintiff asserts did not include any contact with her or the child's grandmother, DYFS concluded that the complaint was "unfounded." The Office of the Burlington County Prosecutor in New Jersey also investigated. After reviewing a videotape of an interview of the child conducted by the Maryland State Police and meeting with defendant, the prosecutor's office declined to pursue the matter. Neither party suggests that anyone other than defendant and the child were present at the time the alleged abuse allegedly occurred.
On July 8, 2005, plaintiff obtained a temporary protective order in Maryland. Defendant was afforded supervised visits in Maryland on July 27 and August 8, 2005. The professionals who supervised those visitations completed reports recording their observations and impressions. The Maryland court conducted a hearing on continuation of the temporary protective order, determined that there was inadequate evidence to support a finding of abuse and dismissed the protective order on September 9, 2005.
Before the temporary protective order was dismissed, defendant commenced this post-judgment litigation. He moved for modification of the child's residential custody. Plaintiff responded with a cross-motion asserting that Maryland was a more appropriate forum and asking the court to suspend temporarily defendant's parenting time. Because plaintiff filed an expert report late, the judge of the Family Part did not consider the opinion of an expert psychologist, who evaluated the child and concluded that the child had been abused. On September 30, 2005, the judge denied plaintiff's requests and scheduled a plenary hearing on defendant's motion for change of residential custody.
Plaintiff again sought and obtained a temporary protective order in Maryland. She then filed a notice of appeal with this court. The Maryland court dismissed the protective order after a hearing on December 5, 2005.
Defendant subsequently filed an order to show cause to enforce his parenting time, which the judge of the Family Part granted pending the return date. Plaintiff filed an application for emergent relief with a panel of this court, supported by evidence that the child was hospitalized allegedly due to her reaction to the upcoming parenting time. The panel stayed the Family Part's order and remanded for a hearing on whether it should be modified in light of the child's condition.
After conducting that hearing, the judge entered an order suspending defendant's parenting time until the child made sufficient progress in trauma therapy to permit reunification therapy. Neither party appealed from that order, and the motion panel vacated its stay to permit its implementation. At oral argument, the attorneys *707 advised that the parties are complying with that order.

I
The parties' agreement to designate New Jersey as the "home state" is not determinative of the question of subject matter jurisdiction presented, and defendant does not contend that it is. An agreement between the parties cannot bind the courts of this state to accept subject matter jurisdiction when not permitted by law. Neger v. Neger, 93 N.J. 15, 35, 459 A.2d 628 (1983); Peregoy v. Peregoy, 358 N.J.Super. 179, 184, 817 A.2d 381 (App.Div.2003); cf. N.J.S.A. 2A:34-71b(5) (providing that "any agreement of the parties as to which state should assume jurisdiction" is one factor a court must consider in determining whether this state or another provides a more appropriate forum for a custody dispute).
This case is controlled by the NJUCCJEA, which took effect prior to the date on which defendant filed the motion to change custody. N.J.S.A. 2A:34-94. The NJUCCJEA defines the term "child custody determination" broadly to include any "judgment, decree or other order of a court providing for the legal custody, physical custody or visitation with respect to a child [, including] permanent, temporary, initial and modification order[s]." N.J.S.A. 2A:34-54 (also defining the term "child custody proceeding" to include "a proceeding in which legal custody, physical custody or visitation . . . is an issue"). A parental agreement about custody or parenting time incorporated in a judgment or order is a custody determination, and a motion to modify that determination is a custody proceeding within the meaning of N.J.S.A. 2A:34-54.

II
The NJUCCJEA is modeled on the "Uniform Child Custody Jurisdiction and Enforcement Act" (UCCJEA), which was promulgated by the National Conference of Commissioners on Uniform State Laws (Commissioners) in 1997 to replace the UCCJA; the UCCJA was the product of the Commissioners' first effort to address "the problem of the interstate child." UCCJEA Prefatory Note, 9 (Part IA) U.L.A. 649-50 (1999); see Senate Judiciary Committee Statement to S. 150 (reprinted following N.J.S.A. 2A:34-53). The UCCJA was adopted by all fifty states, and New Jersey was the thirty-seventh state to replace its UCCJA, N.J.S.A. 2A:34-28 to -52, with the UCCJEA. See Senate Judiciary Committee Statement, supra. Maryland also has adopted the UCCJEA. Md. Family Law Code Ann. §§ 9.5-101 to -318; see N.J.S.A. 2A:34-53 (note preceding N.J.S.A. 2A:34-53) (indicating that as of April 2007, forty-four states had adopted the UCCJEA).
The NJUCCJEA should be interpreted so as to avoid jurisdictional competition and conflict and require cooperation with courts of other states as necessary to ensure that custody determinations are made in the state that can best decide the case. Although the UCCJEA was promulgated to refine and improve upon the UCCJA, it retains the central purposes of the prior act. UCCJEA, supra, § 101, comment at 657 (stressing that the UCCJEA should be interpreted according to the purposes of the UCCJA and explaining that Section 1 of the UCCJA, which stated the purposes of that act, was omitted to conform with the format of more recent uniform laws). Those central purposes include avoidance of jurisdictional competition and conflict and promotion of cooperation between courts to ensure that custody determinations are rendered by a *708 court of the state that "can best decide that case. . . ."[3]Ibid. (quoting UCCJA § 1(a)(2), 9 (Part IA) U.L.A. 649-54 (1999)); accord N.J.S.A. 2A:34-29 (repealed with New Jersey's UCCJA when that act was replaced with the NJUCCJEA, L. 2004, c. 147, § 44). When our Legislature adopted the NJUCCJEA it expressed its intention to follow the UCCJEA and noted intended deviations; the Legislature did not indicate any intent to deviate from the central purposes of the UCCJA, which were recognized in prior decisions of our courts and are quoted in the comment to the UCCJEA. Senate Judiciary Committee Statement, supra; see, e.g., Ivaldi v. Ivaldi, 147 N.J. 190, 198, 685 A.2d 1319 (1996); Neger, supra, 93 N.J. at 25-26, 459 A.2d 628; Poluhovich v. Pellerano, 373 N.J.Super. 319, 354-55, 861 A.2d 205 (App.Div.2004); see Ivaldi, supra, 147 N.J. at 198, 685 A.2d 1319 (considering the comment to the UCCJA in interpreting New Jersey's UCCJA); Marshak v. Weser, 390 N.J.Super. 387, 392, 915 A.2d 613 (App.Div.2007) (noting that our courts consider comments to model acts in construing laws of our state).

A
The first question a court must consider when a question of jurisdiction is raised on a motion to modify a custody order entered by a court of this state is whether this state acquired "exclusive, continuing jurisdiction" over custody determinations involving this family when the initial order was entered.
The relevant statute is N.J.S.A. 2A:34-66a, which provides:
a. Except as otherwise provided [for exercise of temporary emergency jurisdiction pursuant to N.J.S.A. 2A:34-68], a court of this State that has made a child custody determination consistent with [N.J.S.A. 2A:34-65 (initial custody jurisdiction) or N.J.S.A. 2A:34-67 (jurisdiction to modify)] has exclusive, continuing jurisdiction over the determination. . . .
Pursuant to this provision, this state acquires "exclusive, continuing jurisdiction" when a court of this state makes an initial custody determination authorized by N.J.S.A. 2A:34-65 or modifies a custody determination made by another state when authorized to do so by N.J.S.A. 2A:34-67. Ibid.; accord UCCJEA, supra, § 202; Md. Family Law Code Ann. § 9.5-202.
New Jersey acquired "exclusive, continuing jurisdiction" when this final judgment of divorce was entered. When that proceeding commenced, the child and both of her parents lived in New Jersey, as they had since her birth. New Jersey was her "home state" and, as such, had jurisdiction to make the initial custody determination. N.J.S.A. 2A:34-65a(1); N.J.S.A. 2A:34-54. Although not the exclusive basis, for exercise of jurisdiction to enter the firstthe "initial"custody determination, jurisdiction based on status as the child's home state is preferred. See N.J.S.A. 2A:34-65; accord UCCJEA, supra, § 201; Md. Family Law Code Ann. § 9.5-201.

B
When the courts of this state have acquired "exclusive, continuing jurisdiction," the second question a court confronted with a motion to modify that order must consider is whether, during the time *709 between the initial order and the filing of the motion for modification, circumstances have changed so as to divest this state of that jurisdiction. Subsections a(1) and (2) of N.J.S.A. 2A:34-66, which are modeled on Section 202(a)(1) and (2) of the UCCJEA, define those circumstances.[4] Pursuant to N.J.S.A. 2A:34-66, New Jersey's "exclusive, continuing jurisdiction" is retained until:
(1) a court of this State determines that neither the child, the child and one parent nor the child and a person acting as a parent have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or

(2) a court of this State or a court of another state determines that neither the child, nor a parent, nor any person acting as a parent presently resides in this State.
[N.J.S.A. 2A:34-66a(1)-(2) (emphasis added).]
Thus, N.J.S.A. 2A:34-66 addresses the problem of competing jurisdiction and potentially conflicting orders in two waysby specifying the substantive standards and limiting authority to apply them. While a court of any state may determine that New Jersey has lost its jurisdiction because the child and both of the child's parents have left New Jersey, N.J.S.A. 2A:34-66a(2), only a New Jersey court can determine that New Jersey has lost jurisdiction based on a lack of significant connection and substantial evidence.[5]Accord UCCJEA, supra, § 202(a)(1)-(2); Md. Family Law Code Ann. § 9.5-202.
The comment to the UCCJEA stresses the significance of this provision. The enunciation of standards for "exclusive, continuing jurisdiction" and clarification of jurisdiction to modify custody determinations was deemed essential to avoiding problematic simultaneous judicial proceedings in multiple states and conflicting court orders, which had continued under the UCCJA. UCCJEA, supra, Prefatory Note at 650-51 (describing revisions of the UCCJA included in the UCCJEA and discussing exclusive, continuing jurisdiction).

C
N.J.S.A. 2A:34-66a(2) has no relevance to this case. Defendant, who is "a parent" of the child, has resided in this state continually since the entry of the judgment. See UCCJEA, supra, § 202 comment 2, at 675 (noting that all members of the family have left the state to reside elsewhere, a parent cannot reestablish "exclusive, continuing jurisdiction" in the first state by resuming residence in that state).

*710 D
The question here is whether jurisdiction has been lost pursuant to subsection a(1) of N.J.S.A. 2A:34-66. Under that subsection, a court must determine whether it lacks jurisdiction because "neither the child, [nor] the child and one parent . . . have a significant connection with this State and . . . substantial evidence is no longer available. . . ." N.J.S.A. 2A:34-66a(1).[6] A literal reading compels the conclusion that jurisdiction is retained until both the requisite "significant connection" and the requisite "substantial evidence" are lacking. Stated in the affirmative, N.J.S.A. 2A:34-66a(1) provides that while this state has either the requisite "significant connection" or "substantial evidence," its exclusive jurisdiction continues. Although the comment to the UCCJEA casts some doubt on the propriety of this literal reading, it is at best ambiguous on that point.[7] For the reasons set forth below, we conclude that a literal reading is intended. See Pine Belt Chevrolet, Inc. v. Jersey Cent. Power and Light Co., 132 N.J. 564, 578-79, 626 A.2d 434 (1993) (discussing the problem of relying solely on the use of the word "and" or the word "or" because the words are frequently used as if interchangeable).
Courts of other jurisdictions have construed the language of statutes similar to N.J.S.A. 2A:34-66a(1) literally to permit retention of "exclusive, continuing jurisdiction" based on either a "significant connection" or "substantial evidence." See, e.g., West v. West, 364 Ark. 73, 216 S.W.3d 557, 562 (2005); Grahm v. Superior Court, 132 Cal.App.4th 1193, 34 Cal.Rptr.3d 270, 272-74 (2005); Fish v. Fish, 266 Ga.App. 224, *711 596 S.E.2d 654, 656 (2004); Ruth v. Ruth, 32 Kan.App.2d 416, 83 P.3d 1248, 1254 (2004); In re Forlenza, 140 S.W.3d 373, 378-79 (Tex.2004); cf. Benson v. Benson, 667 N.W.2d 582, 585 (N.D.2003) (repeating the somewhat conflicting discussion included in the comment to the UCCJEA quoted above); but see In re Marriage of Medill, 179 Or.App. 630, 40 P.3d 1087, 1093 (2002) (concluding that both prongs of the two-pronged test must be met). The Legislature has directed courts to consider decisions of other states in construing our Act. See N.J.S.A. 2A:34-92.
A literal reading is consistent with the legislative history. The pertinent committee statement describes exclusive jurisdiction as continuing so long as one party remains in the state, unless a court of this state "determines that another state has a more significant connection to the child." Senate Judiciary Committee Statement, supra. The same statement expresses the Legislature's intention to bring New Jersey's law into compliance with the Federal Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A (PKPA). See ibid. The PKPA authorizes continuing jurisdiction so long as any contestant remains in the state and the state court has jurisdiction under its laws. 28 U.S.C.A. § 1738A(c)(1), (d). Thus, consistency with the PKPA does not require an interpretation that deviates from the literal terms of N.J.S.A. 2A:34-66a(1).
Finally, a literal reading of N.J.S.A. 2A:34-66a(1) does not create a conflict with any other provision of the NJUCCJEA. There is no reason for identical standards for exercise of jurisdiction to enter an initial custody order and exercise of jurisdiction to modify a custody order entered by a court of this state. In Neger, the New Jersey Supreme Court addressed the important difference between initial custody order and modification of prior orders. 93 N.J. at 28, 459 A.2d 628. The Court took a broad view of the continuing jurisdiction of a state that has entered an initial custody decree. Id. at 28-31, 459 A.2d 628. Adopting an approach taken by the California Supreme Court, the Court explained there is a "`strong presumption . . . that the decree state will continue to have modification jurisdiction until it loses all or almost all connection with the child.'" Id. at 30-31, 459 A.2d 628 (quoting Kumar v. Superior Court, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1009-10 (1982)); see also Grahm, supra, 34 Cal.Rptr.3d at 275 (concluding that the provision of California's UCCJEA defining the circumstances under which exclusive, con tinuing jurisdiction is lost, which is identical to N.J.S.A. 2A:34-66a(1), must be construed in accordance with Kumar).
The question whether continuing jurisdiction can be retained on the basis of either the requisite "significant connection" or "substantial evidence" or must be based on both may have limited practical importance. This is so because the UCCJEA and NJUCCJEA reserve to the state that has acquired "exclusive, continuing jurisdiction" the authority to decide whether it has expired due to lack of the requisite "significant connection" and "substantial evidence," UCCJEA, supra, § 202; N.J.S.A. 2A:34-66a(1), and because both acts require a court with "exclusive, continuing jurisdiction" to decline that jurisdiction when another state provides a "more appropriate forum." UCCJEA, supra, § 207; N.J.S.A. 2A:34-71. Both decisionsthat jurisdiction has expired and that another forum is more appropriate result in a vesting of continuing, exclusive jurisdiction in the state that next modifies the custody order in accordance with the UCCJEA. See UCCJEA, supra, §§ 202(a), 203; N.J.S.A. 2A:34-66a, -67; Md. Family Law Code Ann. §§ 9.5-202(a), -203.
*712 Thus, we see no need or justification for deviating from the meaning compelled by a literal reading of N.J.S.A. 2A:34-66a(1). See O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002). We hold that so long as there is either a "significant connection" or "substantial evidence," exclusive, continuing jurisdiction is retained.

E
The "significant connection" that permits exercise of "exclusive, continuing jurisdiction" is present in this case. N.J.S.A. 2A:66a(1). As the comment to the UCCJEA explains, the focus here is on the "relationship between the child and the [parent] remaining in the State with exclusive, continuing jurisdiction. . . ." UCCJEA, supra, § 202 comment 1, at 674. When that relationship becomes too attenuated, "exclusive, continuing jurisdiction" is lost. Ibid.
This child's connection with defendant and New Jersey is not so attenuated as to be deemed not "significant." The child left New Jersey in June 2001, shortly before her third birthday. Between that time and August 9, 2005, the date on which defendant filed this motion to change custody, the child returned to New Jersey for parenting time on alternate weekends and holidays and two weeks during the summers, at least twenty percent of each year. Defendant also shares legal custody of the child with plaintiff, which gives him a role in the child's life beyond the hours of his parenting time. Consistent with the final judgment of divorce, which suggests, although not strongly, an agreement to litigate in New Jersey, both parties sought relief in our courts on numerous occasions following their divorce and prior to this litigation. They and their child attended family counseling in New Jersey pursuant to a court order, and the abuse that was alleged by plaintiff, allegedly occurred in this state.
These facts do not permit a finding that the "child" or "the child and one parent" (defendant, who is the parent remaining in this state) did not have a "significant connection with this State" when defendant filed this motion. The ordinary sense of the word "significant" is "meaningful." Webster's II New College Dictionary 1027 (1999). The papers submitted below raise a question about the quality of the relationship between defendant and his child, but they do not raise a reasonably debatable question about its significance or its connection with this state. See UCCJEA, supra, § 201, comment 1, at 672 (discussing elimination of the "best interest" element of significant connection jurisdiction, which created confusion between the jurisdictional and substantive issues).
The question whether the requisite significant connection remains is fact specific and the scenarios vary greatly from case-to-case. Generally, however, courts of other jurisdictions applying statutes similar to New Jersey's have found a "significant connection" when the parent who remains in the state in which the custody order was entered exercises parenting time. Where there is visitation with a parent in the state, other factors (such as the length of time since the child has lived elsewhere, the child's involvement with other family members and activities in the state and agreements concerning the site for post-judgment litigation) are generally considered relevant to the question whether jurisdiction should be declined in favor of a more appropriate forum. See, e.g., West, supra, 216 S.W.3d at 562 (finding jurisdiction continued where children spent twenty percent of their time with their father who remained in Arkansas); Grahm, supra, 34 Cal.Rptr.3d at 272-74 (finding adequate connection based *713 on parenting time during the summer and alternating holidays and noting that there is a "significant connection" so long as the remaining parent continues to assert and exercise visitation rights); Steckler v. Steckler, 921 So.2d 740, 741-42 (Fla.Dist. Ct.App.2006) (finding adequate connection based on visitation for four weeks in summer and during winter break in alternate years); Fish, supra, 596 S.E.2d at 655-56 (finding adequate connection based on visitation during the month of July and five other times during the year); Horgan v. Romans, 366 Ill.App.3d 180, 303 Ill.Dec. 311, 851 N.E.2d 209 (2006) (acknowledging retention of exclusive, continuing jurisdiction based on father's parenting time but affirming order declining exercise in favor of a more appropriate forum); Ruth, supra, 83 P.3d at 1253 (significant connection based on visitation in Kansas two weekends per month and during the summer); Shanoski v. Miller, 780 A.2d 275, 276-78 (Me.2001) (finding adequate connection based on parenting time but concluding that there was no error in declining exercise where child had reached school age since leaving Maine and remanding for consultation with the Florida judge who had issued a protective order); Watson v. Watson, 272 Neb. 647, 724 N.W.2d 24, 30 (2006) (quoting and approving the construction in Grahm, supra, 34 Cal.Rptr.3d at 274); Stocker v. Sheehan, 13 A.D.3d 1, 786 N.Y.S.2d 126 (2004) (noting that Rhode Island, the state that entered the initial custody order, must decide the question of "significant connection" and "substantial evidence" but noting that visitation with the parent who remained in Rhode Island was an adequate basis for continuing exercise of that jurisdiction); Forlenza, supra, 140 S.W.3d at 376 (finding adequate connection based on six visits with parent in Texas over a four-year period, four of which were one-month visits and noting that children also maintained contacts with relatives in Texas).
Because we conclude that defendant and the child retained a "significant connection" with this state, it is unnecessary to consider whether there is "substantial evidence" in this state. One of the two alternative bases for continued exercise of exclusive jurisdiction pursuant to N.J.S.A. 2A:34-66a(1) is satisfied.

III
The question remains whether the Family Part abused its discretion by failing to decline jurisdiction in favor of Maryland pursuant to N.J.S.A. 2A:34-71. See UCCJEA, supra, § 207. The focus of that inquiry is whether "the court of another State is in a better position to make the custody determination, taking into consideration the relative circumstances of the parties." Id. comment at 683.
N.J.S.A. 2A:34-71 provides:
a. A court of this State that has jurisdiction . . . may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon the court's own motion, request of another court or motion of a party.
b. Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

(1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

*714 (2) the length of time the child has resided outside this State;
(3) the distance between the court in this State and the court in the state that would assume jurisdiction;
(4) the relative financial circumstances of the parties;
(5) any agreement of the parties as to which state should assume jurisdiction;
(6) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;
(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
(8) the familiarity of the court of each state with the facts and issues of the pending litigation.
c. If a court of this State determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.
[(Emphasis added).]
The factors most relevant in this case indicate that the Family Part erred in not declining jurisdiction, which is a decision that can be made at any time during the proceeding. Ibid.
When defendant filed this motion to change the custodial arrangement, the child and her mother had lived in Maryland for four years, and the child was only seven years of age. N.J.S.A. 2A:34-71b(2). She had been evaluated by speech and educational therapists in Maryland who had both made note of difficulties that required remediation. N.J.S.A. 2A:34-71b(6). The child had been seeing a psychologist in Maryland, to whom the judge of the Family Part previously had turned for a recommendation about supervision of parenting time. Ibid. The child had reported abuse to her mother and grandmother, both Maryland residents, and to her psychologist in Maryland. N.J.S.A. 2A:34-71b(1). She made no reports in New Jersey. New Jersey authorities had received second-hand reports and turned to authorities in Maryland for assistance in investigating the allegations. By the date that the judge entered the order from which plaintiff appeals, plaintiff had a psychologist's report, expressing the opinion that the child had been abused.
While there had been significant post-judgment litigation in New Jersey, there had been only one hearing concerning a temporary suspension of parenting time, after which the judge relied on the recommendation of the psychologist who was treating the child in Maryland. N.J.S.A. 2A:34-71b(8).
The Maryland court also had familiarity with the litigants and the controversy. Ibid. A Maryland court had issued one tempo rary protective order, which was dismissed after a hearing, and a second temporary protective order, which was still in place when defendant filed his motion. Ibid. In addition, supervisors in Maryland had observed defendant and the child during visitation on two occasions and made pertinent observations. N.J.S.A. 2A:34-71b(6).
To the extent that defendant asserted that the allegations of abuse were false and the product of plaintiff's efforts to alienate the child or the child's proclivity to assert false allegations against both parents, he did not demonstrate that relevant evidence or witnesses, other than one unidentified witness referenced in the certification he submitted on the motion, was available in New Jersey or that New Jersey *715 would be in any better position to protect the child. To the contrary, beyond defendant's testimony, evidence substantiating his assertions, if available, was more likely in Maryland, the state in which the child spends eighty percent of her time with her mother, attends school and sees a counselor.
If the child is in need of protection, the courts of Maryland, which have addressed protective orders on two occasions, are in a better position to provide it.
Accordingly, statutory factors (1), (2), (6), (7) and (8) weigh heavily in favor of a finding that Maryland was in a better position to acquire and receive the relevant evidence. No factor other than factor (5) favors New Jersey as the more appropriate forum. To the extent that the parties agreed in 2001 that New Jersey would be the "home state pursuant to the [UCCJA]," that agreement does not clearly indicate an intention to conduct post-judgment litigation in New Jersey four years later, regardless of changes in the controlling law or familial circumstances.
The judge of the Family Part failed to give adequate consideration to the relevant statutory factors and to focus on the question whether this state or Maryland was in the best position to decide this case. N.J.S.A. 2A:34-71a ("a more appropriate forum"). Under these circumstances, it was a mistaken exercise of discre tion to deny defendant's request to decline to exercise exclusive, continuing jurisdiction and refuse to permit the litigation to proceed in a more appropriate forum.
In order to provide additional guidance for future cases, we must recognize that there were several points during the course of the parties' post-judgment litigation at which the judge of the Family Part in this state should have consulted with the judge in Maryland. See N.J.S.A. 2A:34-62 (authorizing communication at any time and describing the manner in which it should be conducted); N.J.S.A. 2A:34-70 (requiring communication where a proceeding has been commenced in another state exercising jurisdiction in accordance with the UCCJEA; exercise of temporary emergency jurisdiction is authorized); UCCJEA, supra, § 204 (authorizing emergency jurisdiction and requiring a court invoking that authority to communicate with the court of another state under specified circumstances); N.J.S.A. 2A:34-68 (same). Our courts previously have stressed the importance of such communication. See Ivaldi, supra, 147 N.J. at 205, 685 A.2d 1319; Peregoy, supra, 358 N.J.Super. at 197-202, 817 A.2d 381. The judge did not communicate with the Maryland court until April 2006.[8]
When the judge of the Family Part denied plaintiff's motion to decline jurisdiction, the Maryland court had entered and dismissed protective orders and dismissed plaintiff's application for modification of custody on defendant's motion. The judge assumed that the Maryland orders reflected that court's unwillingness to assume jurisdiction. Because defendant remained in New Jersey, however, the court in Maryland lacked jurisdiction to modify the New Jersey custody determination, on other than an emergency basis, until a court of this state declined jurisdiction in favor of the more appropriate forum. Md. Family Law Code Ann. § 9.5-203; accord N.J.S.A. 2A:34-67; see N.J.S.A. 2A:34-66. The consulta tion authorized by N.J.S.A. 2A:34-62 and required by N.J.S.A. 2A:34-67 *716 and N.J.S.A. 2A:34-70 avoids the need for such speculation.
Because this court has determined that New Jersey is an inconvenient forum and that Maryland is the more appropriate forum, Maryland, as the child's home state, may assume jurisdiction to modify custody. See N.J.S.A. 2A:34-66 and N.J.S.A. 2A:34-71; Md. Family Law Code Ann. § 9.5-203. Because New Jersey has declined jurisdiction on the ground that it is an inconvenient forum and Maryland is a more appropriate forum, if and when Maryland exercises its jurisdiction to modify the custody order, Maryland will acquire exclusive, continuing jurisdiction. See Md. Family Law Code Ann. §§ 9.5-202, -203; N.J.S.A. 2A:34-66; UCCJEA, supra, §§ 202, 203.
Pursuant to N.J.S.A. 2A:34-71c, when a court of this state concludes that it is an inconvenient forum and that another state is a more appropriate forum, the court must take additional steps. The court must "stay the proceedings upon condition that a child custody proceeding be promptly commenced" in the other state and may impose conditions that are "just and proper." Ibid. Accordingly, we stay further proceedings on the condition that a child custody case be commenced in Maryland within forty-five days of the date of this decision and continue the present order, from which neither party has appealed.[9]

IV
The Family Part's decision to exercise this state's exclusive, continuing jurisdiction is reversed. Proceedings in the trial court are stayed for forty-five days to permit either party to commence proceedings in Maryland. The order entered on partial remand from this court is continued until modified.
NOTES
[1] Although the order is interlocutory, plaintiff did not file a motion for leave to appeal as required by Rule 2:2-4. We exercise our discretion to grant leave to appeal as within time. R. 2:4-4(b)(2); New Jersey Div. of Youth and Family Servs. v. L.A., 357 N.J.Super. 155, 164-65, 814 A.2d 656 (App.Div. 2003).
[2] Plaintiff's statement of facts includes a narrative that is, in many instances, not supported by citation to the record. R. 2:6-2(a)(4).
[3] The language omitted from the quotation is "in the interest of the child[.]" Ibid.; see UCCJEA, supra, § 201, comment 2 at 672 (discussing elimination of the "best interest" element of significant connection jurisdiction, which created confusion between the jurisdictional and substantive issues).
[4] Although defendant does not raise the issue on appeal, it is not clear that plaintiff challenged New Jersey's "exclusive, continuing jurisdiction" below. Plaintiff's argument before the Family Part was based on N.J.S.A. 2A:34-71 and a claim that New Jersey is an inconvenient forum and Maryland is a more appropriate forum (discussed infra). Because of the importance of the jurisdictional issue, we consider it. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973).
[5] The pertinent legislative history explains that "a state which makes the initial custody determination has continuing exclusive jurisdiction if a party to the original custody determination remains in that state. . . . If it determines that another state has a more significant connection to the child, it may relinquish its authority." Senate Judiciary Committee Statement, supra. That description is best understood as a reference to the state's exclusive authority, pursuant to subsection a(1) of N.J.S.A. 2A:34-66, to determine whether exclusive, continuing jurisdiction is lost. Cf. N.J.S.A. N.J.S.A. 2A:34-71a (authorizing a court to "decline" to exercise jurisdiction in favor of "a more appropriate forum").
[6] N.J.S.A. 2A:34-66a(1) is not identical to Section 202(a)(1) of the UCCJEA, which has been modified by many states that have adopted it. The modifications are not surprising because Section 202(a)(1) lacks clarity. In pertinent part it provides:

(a) . . . a court of this State . . . has exclusive, continuing jurisdiction over the determination until:
(1) a court of this State determines that neither the child, the child's parents, and any person acting as a parent do not have a significant connection with this State and that substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships; or. . . .
[UCCJEA, supra, § 202(a)(1).]
[7] The comment states:

If a parent . . . remains in the original decree State, continuing jurisdiction is lost when neither the child [nor] the child and a parent . . . continue to have a significant connection with the . . . State and there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that State. In other words, even if the child has acquired a new home State, the original decree State retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial connection" jurisdiction provisions of Section 201 are met. If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.
[UCCJEA, supra, § 202 comment 1, at 674 (1999) (emphasis added).]
The first underlined portion, like N.J.S.A. 2A:34-66a(1) and the text of Section 202 of the UCCJEA, provides that jurisdiction is retained so long as there is either a significant connection or substantial evidence, but the second and third underlined portions (particularly the reference to "substantial connection" jurisdiction pursuant to Section 201 of the UCCJEA) suggest that jurisdiction is lost unless there is both a significant connection and substantial evidence. See UCCJEA, supra, § 201(a)(2)(A)-(B) (permitting a court to exercise jurisdiction to enter an initial custody order based on "significant connection" and "substantial evidence" when no state qualifies as the child's home state or the home state has declined jurisdiction on the ground that this state is a more appropriate forum); N.J.S.A. 2A:34-65a(2)(a)-(b) (same).
[8] In response to this court's inquiry at oral argument, the parties provided copies of the correspondence exchanged by the judges following that communication, which took place after the limited remand.
[9] As noted above, on limited remand from this court, the Family Part conducted a hearing on the circumstances under which defendant should exercise parenting time. Following that hearing, the Family Part made certain findings. We express no opinion as to the effect of those findings in future litigation.