**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1062-23

B.D.,[1]

    Plaintiff-Appellant,

v.

D.A.B.,

    Defendant-Respondent.

_____

        Submitted September 12, 2024 – Decided September 18, 2024

        Before Judges Sabatino and Berdote Byrne.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-2462-23.

        Adams & Caughman LLC, attorneys for appellant (Lesley Renee Adams and Harriet E. Raghnal, of counsel and on the briefs).

        D.A.B., respondent pro se.

PER CURIAM

---

[1] We use initials of the parties to protect the privacy interests of the child. R. 1:38-3(d).

This Family Part appeal involves the application of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), N.J.S.A. 2A:34-53 to -95, in the context of a custody dispute involving a child's father who lives in New Jersey and a child and mother who reside in New York.

For the reasons that follow, we conclude the Family Part appropriately applied the statute and deferred to the jurisdiction of the New York courts as the child's "home state" during the relevant period. We therefore affirm the Family Part's order declining jurisdiction, without prejudice to potential future proceedings that may be appropriate.

I.

Before we discuss the salient background of this case, a brief discussion of the UCCJEA is useful.

"The UCCJEA governs the determination of subject matter jurisdiction in interstate, as well as international, custody disputes." Sajjad v. Cheema, 428 N.J. Super. 160, 170 (App. Div. 2012). New Jersey's version of the UCCJEA is modeled after the uniform statute promulgated by the National Conference of Commissioners on Uniform State Laws in 1997. Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007). The uniform statute has been adopted by all fifty states. Ibid.

2

The UCCJEA has important practical objectives affecting the welfare and legal status of children. The statute "should be interpreted so as to avoid jurisdictional competition and conflict and require cooperation with courts of other states as necessary to ensure that custody determinations are made in the state that can best decide the case." Ibid. The goal of the statute is to resolve disputes over which court has jurisdiction over a child's custody expeditiously and definitively. See N.J.S.A. 2A:34-59 (jurisdictional questions in child custody proceedings "shall be given priority on the calendar and handled expeditiously").

The UCCJEA, specifically N.J.S.A. 2A:34-65(a), "is the exclusive jurisdictional basis for making a child custody determination by a court of this State." N.J.S.A. 2A:34-65(b). Subsection a. empowers our courts with jurisdiction if New Jersey is the child's "home state."[2] Further, New Jersey courts have jurisdiction if the child has no home state or the home state has declined jurisdiction and the child has a "significant connection" with New Jersey, if the child's home state declines jurisdiction after finding New Jersey is

---

[2] "'Home state' is defined as the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." N.J.S.A. 2A:34-54.

the more appropriate forum, or if no state would otherwise have jurisdiction. N.J.S.A. 2A:34-65(a)(1) to (4).

A temporary absence generally will not affect the child's home state status. "The statutory definition of 'home state' allows the child's 'temporary absence' from the home state within the six month period." Sajjad, 428 N.J. Super. at 173 (quoting N.J.S.A. 2A:34-54). In considering whether an absence is temporary, courts have weighed several factors: "(1) the parent's purpose in removing the child from the state, rather than the length of the absence . . . ; (2) whether the parent remaining in the claimed home state believed the absence to be merely temporary . . . ; (3) whether the absence was of indefinite duration, . . . and (4) the totality of the circumstances surrounding the child's absence." Ibid. (citations omitted).

"If New Jersey is the child's home state, the next inquiry [under the UCCJEA] is whether custody proceedings had been commenced in another state, properly exercising jurisdiction, which issued an initial custody determination. N.J.S.A. 2A:34–70a." Id. at 174. "If so, and the other court had jurisdiction 'substantially in conformity with [the UCCJEA],' then New Jersey must stay its proceedings and communicate with the other court, seeking an agreement on whether New Jersey is the more convenient forum to make the determination.

N.J.S.A. 2A:34–70b." Ibid. "A Family Part judge may decline to exercise jurisdiction if the person seeking to invoke the jurisdiction engaged in unjustifiable conduct, N.J.S.A. 2A:34–72, or if New Jersey is an inconvenient forum and another state would be more appropriate. N.J.S.A. 2A:34–71." Ibid.

## II.

Given this backdrop, we summarize the factual and procedural circumstances of this case that are pertinent to the UCCJEA's application.

### Background Facts

The parties were married in Guyana in 2018. Plaintiff B.D., the child's father, is a dual citizen of Guyana and the United States. Defendant D.A.B., the child's mother, is a citizen of Guyana.

Defendant moved into plaintiff's house in New Jersey in 2020. Their child, J.D., was born in May 2020 in New Jersey. J.D. lived in plaintiff's home until August 2020, when defendant and the child moved to Guyana with plaintiff's consent. Defendant and J.D. resided in Guyana except for two one-month visits to plaintiff in New Jersey in 2021.

Defendant and J.D. visited plaintiff again in New Jersey in August 2022. Plaintiff purchased plane tickets for them to return on September 1 to Guyana. Instead of boarding the plane, and allegedly out of fear plaintiff would renege

A-1062-23

on his promise to pursue United States citizenship for her, defendant took the child to family members in Maryland for three months and then moved to New York in January 2023, where they thereafter remained except for a 17-day trip to Florida in May.

The New Jersey and New York Separate Filings and Proceedings

On May 8, 2023, plaintiff filed in the Family Part a complaint for divorce against defendant, along with an order to show cause ("OTSC"), seeking temporary physical custody of the child. The OTSC was denied without prejudice because plaintiff was then unable to serve defendant.

Defendant was not served with the divorce complaint and OTSC until October 5, 2023, when defendant met plaintiff, at his invitation, for dinner in New Jersey. The parties left the child during the dinner with plaintiff's parents in New York, after which he refused to return the child to defendant.

Defendant did not attend an initial custody hearing on October 10 before the Family Part. Instead, defendant petitioned a New York state court for full custody of J.D., also on October 10. The New York court entered an OTSC requiring the parties to appear on October 19 and obligating the parties to share legal and physical custody of the child until further order of the court and ordering J.D. not be removed from New York without that court's consent.

A-1062-23

At the Family Part hearing on October 10, conducted remotely through Zoom, only plaintiff and his counsel appeared. The following day, October 11, the Family Part entered an order finding defendant was served on October 5 but did not appear at the October 10 hearing. The court ordered the parties to keep J.D. in New Jersey until further direction from the court, granted temporary residential custody of J.D. to plaintiff, and ordered defendant to show cause on November 2 why the court should not grant permanent custody to plaintiff.

On October 19, the New York judge held a hearing concerning defendant's OTSC. Defendant was present and represented by counsel, counsel for the child appeared after appointment by New York State, and plaintiff's counsel appeared "for the sole purpose of disputing jurisdiction." Plaintiff did not personally attend. After hearing argument from counsel for the parents and child, the New York judge continued the hearing to the following day, to have an opportunity to confer with the Family Part judge about the status of the New Jersey proceedings.

## The Two-Judge Joint Hearings

On October 20, the Family Part judge and the New York judge jointly heard argument from the parties concerning jurisdiction under the UCCJEA. Upon perceiving that relevant facts were disputed, the judges accordingly

A-1062-23

ordered the parties to submit certifications clarifying when and where the child and parents had respectively resided in the past five years.

After receiving the parties' factual submissions, the Family Part judge and the New York judge presided over a remote joint hearing on November 2 to decide the proper forum to determine custody. After hearing argument, the judges jointly ruled that the undisputed facts presented in the parties' certifications demonstrated that New York, not New Jersey, was the child's home state under the UCCJEA. That same day, the Family Part judge issued a two-page order dismissing the custody claim from plaintiff's complaint "because New York is the minor child's home state under the UCCJEA." The New Jersey court retained jurisdiction, however, over plaintiff's claim for divorce.

Reciprocally, the New York judge entered an order on November 2 after the joint hearing. That order repeated the joint finding that New York is the child's home state under the UCCJEA because the affidavits submitted by both plaintiff and defendant contained "little, if any, factual dispute between the parties with respect to where the child has lived with petitioner since [] birth." In this regard, the New York judge observed that the child was born in May 2020 and has lived with his mother since birth—primarily in Guyana, "with limited periods in New Jersey until August 2022." "Thereafter, the child was in Florida

and Maryland briefly, before settling in Albany County, New York in [January] 2023."

The New York judge retained jurisdiction to determine custody of the child after finding that New York was a more appropriate forum than New Jersey under N.Y. DOM. REL. § 76-f (McKinney 2010), part of New York's UCCJEA, and our parallel N.J.S.A. 2A:34-71. The New York judge specifically noted that the father's filing of the New Jersey complaint before the mother's filing of the New York petition was not dispositive of UCCJEA jurisdiction, because N.Y. DOM. REL. § 76-e and the parallel terms of N.J.S.A. 2A:34-70 empowered New York to retain jurisdiction after making the initial custody determination.

<u>Plaintiff's Appeal</u>

On December 7, plaintiff appealed the Family Part's November 2, 2023 order dismissing plaintiff's claim for custody and severing it from his claim for divorce. On appeal, plaintiff asserts the Family Part erred in (1) denying the initial OTSC, and (2) denying plaintiff a hearing to determine the home state of the child.

<u>Subsequent Developments in the New York Court</u>

While the present appeal was pending, it came to our attention that further relevant developments occurred in the New York court concerning the parties

9

and J.D.  We take judicial notice of those developments.  N.J.R.E. 201.

On June 24, 2024, the parties executed a consent order, entered by the court, where they agreed to share both legal and physical custody of J.D.  Among other things, the consent order contemplates defendant moving with the child to East Orange, New Jersey.  Both parents are prohibited from "mov[ing] the child beyond 15 miles of the border of East Orange" without the consent of the other parent or the New York court "from the time the Mother and child settle in New Jersey."  Further, "once the Mother and child settle in East Orange," a specific schedule of weekly exchanges applies.  Lastly, "in the event the parties reside in different school districts, the child's school shall be decided by the New Jersey school 'report card', the child's aptitude/needs, and the child's wishes are to be taken into consideration."  The order does not contemplate any residence in New York.  Except for New Jersey, the only location discussed in the order is Guyana (if defendant returns to Guyana, she is entitled to at least six weeks of parenting time each summer and on particular holidays).

### The Mootness Inquiry

Given these developments in the New York court, our clerk's office contacted the parties to solicit their positions on whether the present appeal was now moot.  By letter from his counsel, plaintiff objected to dismissal of his

appeal as moot, asserting this court should still decide (1) whether New Jersey should have denied the OTSC, and (2) whether plaintiff had been entitled to a hearing to determine the home state of the child. Plaintiff urges this court to decide the merits of the appeal to provide trial courts with clarifying guidance on application of the UCCJEA. Defendant did not respond to the mootness inquiry.

## III.

As a threshold matter, we briefly consider whether the appeal should be dismissed on mootness grounds. It is readily apparent that the consent order entered into by the parties and issued by the New York court resolves, at least for the present, the child's custody. There is no indication in the record that plaintiff reserved and pursued a right to appeal New York's exercise of jurisdiction. Moreover, the terms of custody and parenting time specified in the New York order were adopted with plaintiff's consent. There is nothing at present to litigate. As such, there is no unresolved controversy for us to decide. In re Congressional Districts by N.J. Redistricting Comm'n, 249 N.J. 561, 570 (2022).

With that said, we choose to address nonetheless the issues posed by plaintiff. We have the prerogative to do so in our discretion under our case law.

11

In re J.I.S. Indus. Serv. Co. Landfill, 110 N.J. 101, 104 (1988). We exercise that discretion because the issues are fully briefed, and our analysis may be beneficial to the parties (one of whom we note is self-represented) and the Family Part going forward.

In addressing plaintiff's claims that the Family Part erred in declining jurisdiction and dismissing the OTSC, well-settled principles guide our appellate review of such matters. Subject matter jurisdiction under the UCCJEA is a question of law subject to "de novo review." Sajjad, 428 N.J. Super. at 170. See also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference"). While the finding of facts regarding jurisdiction could have triggered deferential review if based on live testimony or credibility findings, the jurisdictional decision under review in this case was based on undisputed facts in certifications submitted by the parties. Accordingly, we review this subject matter jurisdictional decision de novo as a pure question of law. State v. Coviello, 252 N.J. 539, 552 (2023). Applying those standards and the legal requirements of the UCCJEA, we conclude the Family Part did not err, and that no unilateral evidentiary hearing in this state was required or appropriate.

As both judges correctly found at the November 2, 2023 joint hearing, New York was J.D.'s home state at the time of the proceeding. The child had resided in New York for more than six months. J.D. had never resided in New Jersey for any appreciable period beyond the two months immediately following his birth.

Apart from the home state analysis, New York alternatively was the forum with the more "significant connection" with the child. N.J.S.A. 2A:34-65. If the parties had followed their pre-September 2022 plan, the child presumably would have resided in Guyana for the six months preceding the commencement of this action. Guyana has not asserted jurisdiction, nor has any party attempted to obtain such jurisdiction, so New York was arguably empowered to assume jurisdiction under the "significant connection" alternative. See Defrank v. Wolf, 179 A.D.3d 676, 677-78 (N.Y. App. Div. 2020) (where "the child did not have a home state," New York could exercise jurisdiction based on the "significant connection" between the forum and the child). Where a child has no home state, a court may exercise jurisdiction by finding the child and at least one parent "have a significant connection with this state other than mere physical presence," and "substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." N.Y. DOM. REL. § 76(b); see

also N.J.S.A. 2A:34-65 (mirroring the NY statute); <u>B.G. v. L.H.</u>, 450 N.J. Super. 438, 453 (Ch. Div. 2017) (finding a "significant connection" with this state where a parent exercised parenting time in New Jersey and "substantial evidence" given series of expert exams and reports conducted in New Jersey during the divorce proceedings).

We reject plaintiff's argument that home state jurisdiction in New York was nullified by defendant's conduct in moving the child to New York rather than flying with him to Guyana as plaintiff had anticipated. If defendant had moved with the child to Guyana and remained there for six months, plaintiff would still not have been able to establish jurisdiction in New Jersey. To the extent plaintiff contends defendant's conduct in not flying to Guyana is "unjustifiable conduct" under N.J.S.A. 9:2-2, that decision had no bearing on New Jersey's jurisdiction over custody of J.D.

Further, we reject plaintiff's claims of procedural deficiencies. To the contrary, we conclude the Family Part judge followed exactly the correct procedure under the UCCJEA in conferring with the judge from the other state and in participating jointly with that judge in a custody proceeding. <u>See</u> N.J.S.A. 2A:34-62.

Hence, we affirm the rulings by the Family Part under the circumstances presented. That said, our determination is without prejudice to other future proceedings that may become appropriate in New Jersey as the parties carry out the terms of their consent order.

The New York court's non-appealed exercise of jurisdiction gave New York "exclusive, continuing jurisdiction over the determination." N.J.S.A. 2A:34-66(a). Such jurisdiction extends until either New York determines the child no longer has "a significant connection" to New York, or New York or another state "determines that the child, the child's parents, and any person acting as a parent do not presently reside in [New York]." N.Y. DOM. REL. § 76-a(1); accord N.J.S.A. 2A:34-66.

N.J.S.A. 2A:34-66 requires plaintiff to continue to litigate any custody disputes in New York so long as defendant or the child continue to reside there. Should either parent and the child reside in New Jersey for the proscribed statutory period, plaintiff could seek modification of the custody determination under N.J.S.A. 2A:34-66(a)(2).

In addition, if either party should contend the other parent is not complying with the terms of the New York consent order, that parent could move here in New Jersey to enforce the terms of the parties' settlement agreement as

"[a] court of this State may utilize any remedy available under other law of this State to enforce a child custody determination made by a court of another state." N.J.S.A. 2A:34-77(b). Our courts have a duty to enforce such agreements so long as "the latter court exercised jurisdiction in substantial conformity with this act." N.J.S.A. 2A:34-77(a). See, e.g., Neger v. Neger, 93 N.J. 15, 27-38 (1983) (remanding for a trial court to enforce a custody order issued by a California court that substantially conformed with the UCCJEA's home state analysis).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION