NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5345-16T4

P.H.,

      Plaintiff-Respondent,

v.

L.W.,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**November 13, 2018**

**APPELLATE DIVISION**

Submitted October 17, 2018 – Decided  November 13, 2018

Before Judges Ostrer, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0659-16.

Cowen & Jacobs, attorneys for appellant (Barbara E. Cowen, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant L.W.[1] appeals from the Family Part's June 26, 2017, order denying her motion to dismiss the custody matter commenced by plaintiff, P.H., the father of the parties' twin girls. Having considered defendant's arguments in light of the record and applicable principles of law, we conclude the Family Part initially exercised jurisdiction in 2016 based on a mistaken finding that New Jersey was the children's "home state," as the children did not reside here for six consecutive months immediately before plaintiff filed suit. See N.J.S.A. 2A:34-65(a)(1) (discussing the role of the "home state" determination in exercising initial child-custody jurisdiction); N.J.S.A. 2A:34-54 (defining "home state"). Furthermore, the trial court should have determined, by the time it decided defendant's motion to dismiss, that New Jersey lacked "exclusive, continuing jurisdiction," because both parties and their daughters had long been absent from New Jersey, they lacked a significant connection here, and substantial relevant evidence was no longer available here. See N.J.S.A. 2A:34-66(a). In any event, New Jersey had become an inconvenient forum. See N.J.S.A. 2A:34-71. We therefore reverse and remand for a stay of further proceedings in anticipation of dismissal.

In the certifications supporting and opposing defendant's motion, the parties dispute many aspects of their relationship, including competing

---

[1] We utilize initials because of allegations of domestic violence.

allegations of domestic violence. We cannot resolve those controversies on a paper record. However, some basic jurisdictional facts are undisputed.

Defendant comes from South Dakota. In 2012, she met plaintiff in Chicago, where they both were visiting. Their relationship continued in South Dakota, where defendant became pregnant and gave birth to the girls in June 2013. Sometime thereafter, plaintiff returned to his home in New York City. The children and defendant remained in South Dakota until 2015. Plaintiff periodically visited them there, although defendant alleged the visits were marked by acts of domestic violence against her.

In June 2015, defendant and the children travelled east to live with plaintiff. The parties dispute whether defendant intended her move to be permanent. Initially, they spent time in a campground in New York, utilizing defendant's RV. They also spent time at the New York City apartment where plaintiff lived with his mother. Defendant alleged she was a victim of assault at the campground, prompting her to file a New York domestic violence incident report.

On July 15, 2015, plaintiff signed a lease for a house in Dumont. Defendant was not a signer. Although plaintiff maintains that defendant's and the children's residence in New Jersey began when he signed the lease, he does

not dispute that defendant did not arrive in New Jersey with the girls until July 18, 2015.

Plaintiff allegedly assaulted defendant again, in Dumont, prompting defendant to file a domestic violence complaint, and to secure a temporary restraining order (TRO) from the Family Part on December 14, 2015. The court ejected plaintiff from the Dumont home and granted defendant temporary custody of the girls. However, two hearing dates for a final restraining order were adjourned. On January 11, 2016, plaintiff alleged defendant assaulted him almost a month earlier, and he secured a TRO of his own. His TRO did not alter the custody arrangements.

Defendant contends that on January 13, 2016, she packed up her things, hired a mover (as reflected in a mover's inventory of the same date), and left New Jersey with the children, arriving in South Dakota on January 15, 2016. Plaintiff does not dispute those factual allegations. Indeed, he alleged that defendant attempted to wrongfully cash a check of his in Illinois on January 14, 2016. Shortly thereafter, plaintiff returned to New York.

The Family Part dismissed defendant's domestic violence complaint after she failed to appear on January 28, 2016, for the final restraining order hearing. The same day, plaintiff filed the instant case, seeking a determination of paternity and custody. He attempted to serve defendant by mail at her

father's residence in Sturgis, South Dakota. But defendant was living in a different county without notifying plaintiff or the court, allegedly to prevent plaintiff from finding her. Her father certified that he did not forward the mail to his daughter until late October or early November 2016.

In the meantime, defendant sought an order of protection in South Dakota, obtaining a temporary order on January 27, 2016, and a final one on March 8, 2016. The order granted defendant custody of the children.

Defendant did not appear in the New Jersey action. The court entered an order March 17, 2016, requiring defendant and the children to submit to genetic testing to determine paternity. She failed to comply – allegedly because she was still unaware of the action. On September 1, 2016, the Family Part entered an order compelling defendant to return to New Jersey with the children. Presumably based on plaintiff's representations, the court found that defendant "removed the minor children from the State of New Jersey without consent where they had reside[d] for a period in excess of 6 months." The court found that the State had "home state jurisdiction" pursuant to N.J.S.A. 2A:34-54.

On October 25, 2016, the Family Part restated – again without defendant's participation – that New Jersey was the twins' home state, as plaintiff alleged that defendant and the children had resided there for over six

months. The court ordered her to return to New Jersey and issued a bench warrant for her arrest. The court also granted plaintiff temporary sole legal custody of the twins, "to effectuate their return to New Jersey where the issues of paternity and custody need to be addressed by this Court."

Armed with that order, plaintiff sought the South Dakota court's modification of its March 2016 order granting defendant custody. Defendant opposed the motion, challenging the service of the New Jersey action. On March 3, 2017, after conferring with the New Jersey Family Part judge, the South Dakota judge agreed with the Family Part's finding that New Jersey was the girls' home state. The South Dakota court vacated the custody portion of its protection order, but maintained "limited, temporary, concurrent custody jurisdiction" to enforce sanctions for willful disobedience of orders from both courts. Consistent therewith, the South Dakota court ordered defendant to comply with the genetic testing order. Defendant did so, and the test confirmed plaintiff's parentage. On March 31, 2017, the South Dakota court entered an order abdicating its "limited custody jurisdiction" and declaring that New Jersey was the proper jurisdiction to decide custody.

In April and May 2017, defendant challenged New Jersey's jurisdiction in both New Jersey and South Dakota courts. First, she filed a motion in the Family Part to dismiss the New Jersey custody action, arguing that New Jersey

lacked subject matter jurisdiction, or, alternatively, New Jersey should relinquish jurisdiction based on the doctrine of forum non conveniens. The court denied her motion in June 2017, noting that the jurisdictional issue had been decided. Also, as South Dakota had declined jurisdiction, the judge rejected "the idea that this court should deny jurisdiction," because it would leave the family with "no place to go." The judge did express concern that neither party had been in New Jersey for over a year, but invited the parties to take that up in South Dakota. The court did not expressly address defendant's inconvenient forum argument.

Meanwhile, defendant filed an application for reconsideration in South Dakota on May 10, 2017. The application was denied because it was filed in the wrong county. According to counsel, defendant refiled an application in November 2017, but, in January 2018, the court denied it because this appeal was already pending, and the South Dakota court wanted to await its resolution.

On appeal, defendant contends that under N.J.S.A. 2A:34-65(a), New Jersey does not possess "exclusive, controlling jurisdiction" over the custody action; and even if the court did possess such jurisdiction, New Jersey should decline jurisdiction in favor of South Dakota because New Jersey is an

inconvenient forum under N.J.S.A. 2A:34-71. Plaintiff did not file a responding brief.

The Uniform Child Custody Jurisdiction and Enforcement Act, N.J.S.A. 2A:34-53 to -95, governs the jurisdictional questions before us. See Greely v. Greely, 194 N.J. 168, 178 (2008). The Act is designed to reduce conflict among states and "ensure that custody determinations are made in the state that can best decide the case." Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007).

The Act "prioritizes the use of the child's 'home state,' as the exclusive basis for jurisdiction . . . ." Sajjad v. Cheema, 428 N.J. Super. 160, 171 (App. Div. 2012). A New Jersey court has initial child custody jurisdiction if it was the child's "home state" when the proceeding commenced, "or was the home state of the child within six months before the" proceeding commenced "and the child is absent from this State but a parent or person acting as a parent continues to live in this State." N.J.S.A. 2A:34-65(a)(1).

Based on the undisputed facts now before us, New Jersey was not the home state when plaintiff commenced his custody action on January 28, 2016. In his 2017 certification, plaintiff essentially concedes the children were not living here "for at least six consecutive months immediately before the commencement" of his action. See N.J.S.A. 2A:34-54 (defining "home state").

The children arrived in New Jersey on July 18, 2015. They left with defendant on January 13, 2016, five days short of six months. Had they gone on a vacation until plaintiff filed his action, that "temporary absence" would be included in the relevant period of time. Ibid. However, defendant did not intend to return, having hired a mover to transport her belongings to South Dakota. Consequently, New Jersey was not the children's home state, nor was it the home state within the six-month period before the action commenced. Therefore, New Jersey did not acquire jurisdiction based on home-state status.

We recognize that the lack of home-state status does not necessarily divest a state of jurisdiction. A New Jersey court may exercise jurisdiction if no court of another state has home-state jurisdiction, or a court with home-state jurisdiction declines to exercise it, and two other factors are present:

> (a) the child and the child's parents, or the child and at least one parent or a person acting as a parent have a significant connection with this State other than mere physical presence; and
>
> (b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;
>
> [N.J.S.A. 2A:34-65(a)(2).]

Unless defendant's moves to New York and then New Jersey were deemed temporary absences from South Dakota, it would appear that neither South Dakota nor any other state was the children's home state when the

A-5345-16T4

custody action commenced, nor was it in the previous six months. The children had left South Dakota over seven months before the custody action filing on January 28, 2016. Thus, the court conceivably could have grounded New Jersey jurisdiction on the basis of the "significant connection" and "substantial evidence" tests. In January 2016, a plausible argument could have been made that those tests were satisfied, given the children's residence in New Jersey for over five months.

However, the Family Part did not make findings with respect to those tests, nor do the orders reflect any reliance on them. Rather, the Family Part, evidently relying on plaintiff's representations, and lacking the benefit of a response from defendant, exercised jurisdiction based on its mistaken determination that New Jersey was the children's home state. Furthermore, the South Dakota court declined jurisdiction based on the same determination.

Even if the trial court could have initially exercised jurisdiction on practical grounds, notwithstanding New Jersey was not the children's home state, that basis for exercising jurisdiction has disappeared. By the time defendant sought an order dismissing the case in April 2017, neither party nor the children had been in New Jersey for almost a year and a half. We take judicial notice of the fact that no orders have been entered in the Family Part in connection with this case since entry of the June 2017 order on appeal.

As a result, as of June 2017, when the trial court denied defendant's motion, it lacked "exclusive, continuing jurisdiction" over the initial determination. That is so for two independent reasons. First, "neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this State and . . . substantial evidence is no longer available in this State concerning the child's care, protection, training, and personal relationships." N.J.S.A. 2A:34-66(a)(1); see Griffith, 394 N.J. Super. at 146 (noting that "[t]he question whether the requisite 'significant connection' remains is fact specific"). Second, "neither the child, nor a parent, nor any person acting as a parent presently resides in this State." N.J.S.A. 2A:34-66(a)(2).

Furthermore, as of June 2017, South Dakota would be a more convenient forum to exercise jurisdiction under N.J.S.A. 2A:34-71. Even if, initially, the Family Part properly exercised jurisdiction for reasons it did not express, a New Jersey court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Ibid. We need not extensively consider the statutory factors to conclude that South Dakota is a more appropriate forum than New Jersey.

11                                    A-5345-16T4

Even if domestic violence occurred in New Jersey (the parties' competing claims were never resolved), New Jersey is poorly situated to "best protect the parties and the child," since no one lives here anymore. <u>See</u> N.J.S.A. 2A:34-71(b) (stating, as a factor in determining a forum's convenience, "whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child"). Besides, defendant alleged that domestic violence also occurred in South Dakota and New York.

Also, the children have now resided outside the State for over two and a half years. <u>See</u> N.J.S.A. 2A:34-71(b)(2) (naming as a relevant factor "the length of time the child has resided outside this State"). New Jersey is far from where the children and defendant reside. <u>See</u> N.J.S.A. 2A:34-71(b)(3) (naming as a relevant factor "the distance between the court in this State and the court in the state that would assume jurisdiction"). The weight of evidence relevant to a custody determination at this point is located in South Dakota, and perhaps to some extent in New York, assuming plaintiff continues to reside there. <u>See</u> N.J.S.A. 2A:34-71(b)(4) (naming as a relevant factor "the nature and location of the evidence required to resolve the pending litigation"). At this point, New Jersey has no significant familiarity with the facts and issues pertaining to custody. <u>See</u> N.J.S.A. 2A:34-71(b)(8) (naming as a

A-5345-16T4

relevant factor "the familiarity of the court of each state with the facts and issues of the pending litigation"). The Family Part never held a plenary hearing to address custody.

Because New Jersey lacks exclusive, continuing jurisdiction, South Dakota courts are free to exercise jurisdiction without trampling upon New Jersey's exercise of jurisdiction, even assuming, without deciding, that jurisdiction was properly exercised in 2016. If defendant and the children have resided in South Dakota since January 2016, then the South Dakota court has jurisdiction to modify the October 2016 New Jersey order, which granted plaintiff only temporary custody. Notably, that award of custody was designed merely to bring the parties and children before the New Jersey court so it could make a final determination, based on a full consideration of the evidence.

Under S.D. Codified Laws § 26-5B-203, which is analogous to N.J.S.A. 2A:34-67, the South Dakota court may not modify an out-of-state order, such as the October 2016 New Jersey order, unless two conditions are met. First, the South Dakota court must have "jurisdiction to make an initial determination under § 26-5B-201(a)(1) or (2)" – which is equivalent to N.J.S.A. 2A:34-65(a)(1) or (2). In other words, South Dakota must satisfy the "home state" requirement. That factor would now appear to be satisfied,

assuming the continued residence there of the children and defendant for six or more consecutive months.

The second condition may be satisfied two ways. It may be satisfied if "the court of the other state [that is, New Jersey] determines it no longer has exclusive, continuing jurisdiction . . . or that a court of [South Dakota] would be a more convenient forum." S.D. Codified Laws § 26-5B-203(1). We have made both those determinations. Alternatively, the second condition may be satisfied if "[a] court of [South Dakota] or a court of the other state [New Jersey] determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state [New Jersey]." S.D. Codified Laws § 26-5B-203(2). We have made that determination as well.

We appreciate the Family Part's concern that dismissing the action entirely would leave the parties with no forum to resolve their custody dispute. However, the provision governing declining jurisdiction based on inconvenient forum empowers the court to stay all proceedings, conditioned upon the commencement of child custody proceedings in the more convenient forum. N.J.S.A. 2A:34-71(c).

In sum, we reverse the trial court's order denying the motion to dismiss and retaining jurisdiction. In the exercise of caution, we do not order the pending matter be dismissed immediately. Rather, it shall be stayed so that

defendant may, within thirty days, renew or commence proceedings in South Dakota. Once that occurs, the Family Part shall dismiss the case.[2]

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] The trial court shall also vacate the bench warrant if it remains of record.

15 A-5345-16T4