**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4212-18T4

ANSON B. ORR,

     Plaintiff-Respondent,

v.

NAQUEA JOHNSON,

     Defendant-Appellant.

_____

          Argued telephonically March 19, 2020 –
          Decided May 14, 2020

          Before Judges Nugent, Suter and DeAlmeida.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FD-07-2874-18.

          Kevin C. Orr argued the cause for appellant.

          Robert C. Pierce argued the cause for respondent.

PER CURIAM

     Defendant, Naquea Johnson, a resident of Virginia, appeals the Family

Part order dated May 29, 2019, that denied her motion for reconsideration of

custody orders involving her child with plaintiff, Anson B. Orr, a resident of New Jersey.  We reverse the order for reconsideration because it was based on the parties' purported agreement that New Jersey should have jurisdiction.  We remand the case to the Family Part to determine whether New Jersey had jurisdiction under the "significant connection" and "substantial evidence" tests of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95.

## I.

Plaintiff and defendant are the parents of J.O. (Jimmy), born on April 20, 2017.  They have never been married to each other and reside in different states.  Jimmy was born in Virginia.  He has half-siblings in New Jersey and Virginia.  Plaintiff's name was not on Jimmy's birth certificate.

In February 2018, plaintiff and defendant signed a Custody and Parenting Time Agreement (the Agreement).  Under the Agreement, they share joint legal custody of Jimmy.  Plaintiff is designated as physical custodian and is the parent of primary residence. Defendant is the parent of alternate residence, New Jersey is Jimmy's domicile and New Jersey law governs the execution and enforcement of the Agreement.  The Agreement provides "jurisdiction shall lie in the State

of New Jersey." Defendant's parenting time is to be "arranged and agreed upon by both parties."

On April 11, 2018, plaintiff filed an order to show cause and verified petition in the Family Part in Essex County, New Jersey, claiming defendant would not return Jimmy to him eleven days after her parenting time in Virginia ended. He requested enforcement of the Agreement, and Jimmy's return to New Jersey. At the hearing—where it was acknowledged defendant was not notified—there was concern defendant might drop off the child somewhere plaintiff "may not know where he is." Defendant allegedly had a "very unstable living situation," another child "was in a gang," she "could not handle an infant with her work schedule," and at some point, she advised plaintiff to keep the child and not to return him.

The court granted emergent relief based on the Agreement, defendant's refusal to return the child to New Jersey and her "willingness to make it difficult for [plaintiff] to retrieve the child." The April 11, 2018 order provided plaintiff had primary residential custody of Jimmy, ordering defendant to turn him over to plaintiff immediately.

A-4212-18T4

Plaintiff gave defendant a copy of the order on April 15, 2018, along with a letter from his attorney informing her about the return date on April 18, 2018. Defendant claimed she was not served with any of the supporting papers.

Defendant wrote to the Family Part judge on April 16, 2018, asking for a thirty to sixty-day adjournment and explaining Jimmy was not "in a harmful situation." She claimed Jimmy's "home state" was Virginia where he was born, received his immunizations, was enrolled in day care and resided with his siblings. She argued paternity was not established, she was the "sole legal guardian" and Virginia had jurisdiction. Defendant explained the Agreement was signed so that plaintiff could cancel a year-long day care contract that was being debited monthly from his bank account.

The adjournment request was denied. Defendant participated by telephone on April 18, 2018 when the trial judge called her. Defendant made the same arguments to the judge she had made in her letter about jurisdiction and the purpose of the Agreement. She advised the court plaintiff "refused to legally . . . acknowledge paternity of [Jimmy]" and questioned whether the court could determine custody without first establishing paternity.

Plaintiff acknowledged he was Jimmy's father. He cited to emails from defendant that he claimed supported the Agreement's custody arrangement.

4

The court's April 18, 2018 order required paternity testing, found personal jurisdiction over defendant because she responded to the order to show cause and determined that New Jersey had jurisdiction. The court awarded plaintiff "temporary sole, legal and residential custody" of the child with the next proceeding scheduled for May 30, 2018. Defendant was ordered to turn the child over to plaintiff.

Defendant filed a motion requesting modification of the April 18, 2018 order, to return the child to her custody and to declare Virginia had jurisdiction. She filed an order to show cause for an emergent return of custody to her and a declaration that Virginia had jurisdiction. In it, defendant claimed she was coerced into signing the Agreement. She asserted that as of April 19, 2018, Jimmy had spent 100 nights in New Jersey and 263 in Virginia. Defendant also submitted a form of motion entitled "stay pending appeal" that was addressed to plaintiff's attorney.[1] In it, she claimed that for six months prior to April 19, 2018, Jimmy spent only sixty-four nights in New Jersey. She detailed how she had been coerced into signing the Agreement and that plaintiff was emotionally abusive. Defendant also filed an application in Virginia for Jimmy's custody,

---

[1] Defendant's notice of motion is not stamped "filed" although the trial court indicated it had received it.

but it was not accepted, because New Jersey already had asserted jurisdiction. See Va. Code Ann. § 20-146.17 (2020).

Defendant appeared before the Family Part on May 2, 2018, regarding her order to show cause, but the court did not sign it, finding there was nothing emergent before May 30, 2018.

At the May 30, 2018 hearing—before a different Family Part judge—the court entered a paternity order because testing confirmed plaintiff was Jimmy's father. It ordered parenting time for defendant. This court assumed the Agreement was the basis upon which the prior Family Part judge established jurisdiction in New Jersey, rather than in Virginia. The court clarified that when defendant signed the Agreement "whether you felt you had a jurisdictional dispute or not, you submitted voluntarily to the jurisdiction of this [c]ourt." The court noted under the UCCJEA the state that enters the initial custody order has "continuing and exclusive jurisdiction" until it relinquishes it. Apparently considering the April 18, 2018 order to be a final order, the court noted there were "two ways to go" for defendant: file a motion for reconsideration, where the issues could be briefed, or file an appeal.

A visitation rights hearing was heard on September 5, 2018, before a third Family Part judge. Plaintiff insisted the only issue remaining was defendant's

parenting time. Defendant argued custody needed to be resolved because the prior custody order was temporary. The court ordered the parties to attend mediation, and if not successful, to appear in court on October 15, 2018. In the interim, they were to exchange the child on a monthly basis. The court asked the parties to submit their positions in writing about the issues they claimed were unresolved. Mediation was not successful.

On October 30, 2018, defendant filed a motion seeking modification of the April 11 and 18, 2018 orders, to change custody and to relocate the child to Virginia. She argued the Agreement was not determinative of the court's subject matter jurisdiction and New Jersey should relinquish jurisdiction. Plaintiff opposed the motion and requested enforcement of the Agreement and prior orders.

The motions were returnable on January 3, 2019. The Family Part judge[2] found New Jersey had jurisdiction based on the significant amount of time the child spent in New Jersey and the Agreement indicating New Jersey was the home state. The court understood that the first Family Part judge made a decision on custody based on the Agreement and then no one appealed or asked for relief from the order.

---

[2] This judge entered the May 30, 2018 order.

A-4212-18T4

The court heard testimony from plaintiff and defendant. It determined there was no reason to modify the Agreement's provision for joint legal custody. The parties were having some difficulty agreeing, but there was no reason they could not co-parent. Both were willing to accept custody. The child should have a relationship with all his siblings. There was no evidence of a history of domestic violence and neither parent posed a threat to the safety of the child. The court found neither home was unstable and both parents could meet the needs of the child appropriately. Geographic proximity was a problem. Each parent spent a substantial amount of time with the child.

The court's January 3, 2019 order provided the parties would exercise joint legal and residential custody, alternating parenting time month to month. It was amended on January 11, 2019, to conform with the record: the Agreement was enforced and plaintiff was designated the "primary residential custodian of the child."

Defendant filed a pro se objection to the order. She asserted Virginia was the child's "[h]ome [s]tate," citing the UCCJEA. Defendant's counsel filed a motion for reconsideration of all the orders, arguing lack of personal and subject matter jurisdiction and that there were due process violations. Plaintiff filed

opposition in support of a cross-application. The motions were denied on May 29, 2019.

The court's written opinion concluded defendant did not satisfy the standard to reconsider the January 11, 2019 order. The parents' custodial arrangement was set forth in the Agreement. They were presumed to act in the child's best interest. The court found the Agreement was an integrated final document and was not ambiguous. The court concluded that "the credible evidence support[ed] a valid, voluntarily entered, written integrated contract whose terms are enforceable." Defendant's assertions about fraud and coercion were found not to be credible.

The court found the central issue was jurisdiction. Under N.J.S.A. 2A:34-65(c), personal jurisdiction was not necessary to make a child custody determination. However, defendant subjected herself to jurisdiction by raising an issue about paternity. Given the clear language of the Agreement, the court noted she should not have been surprised that a court action would be instituted in New Jersey.

Under the UCCJEA, the court found the child had not lived with either parent for a consecutive six months before the custody action was initiated nor could it be established the times the child spent with the other parent were

temporary absences. The court found that text messages between the parties "reflect[ed] an ongoing discussion about the unsettled nature of the child's living situation" and that the child "lived in both places according to the needs and desires of the parents." The court found "the parties engaged in a shared parenting relationship where each parent had the child for substantial periods of time, without durational limits, and dependent upon the parties', particularly [defendant's], circumstances at any given time." The court concluded that either of the two states could qualify as the child's home state but neither could assert priority over the other. Then, looking to the Agreement as to the parties' intent, the court concluded New Jersey had home state jurisdiction under N.J.S.A. 2A:34-65(a)(1), and denied the motion for reconsideration.

On appeal, defendant argues the orders entered on April 11 and 18, 2018, violated defendant's procedural due process rights and were entered without personal or subject matter jurisdiction, requiring them to be set aside. Defendant argues all the other orders entered by the trial court are invalid because of these due process violations, insufficient and defective process and lack of personal and subject matter jurisdiction.

II.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citations omitted), in recognition of the "family courts' special jurisdiction and expertise in family matters[.]" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Defendant appeals from an order denying her motion for reconsideration. We review the denial of a motion for reconsideration for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Our review is limited. State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015). Reconsideration is not appropriate merely because a litigant is dissatisfied with a decision. D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). Reconsideration is appropriate only where "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious

that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid.

The UCCJEA "governs the determination of subject matter jurisdiction in interstate, as well as international, custody disputes." Sajjad v. Cheema, 428 N.J. Super. 160, 170 (App. Div. 2012). It serves to "ensure that custody determinations are made in the state that can best decide the case." Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007). The UCCJEA was enacted "'to avoid jurisdictional competition and conflict' between jurisdictions in favor of 'cooperation with courts of other states.'" Sajjad, 428 N.J. Super. at 170-71 (quoting Griffith, 394 N.J. Super. at 138). To address a multi-state child custody issue, courts in the Family Part are to follow the procedures in the UCCJEA. Ibid. (citing Poluhovich v. Pellarano, 373 N.J. Super. 319, 357 (App. Div. 2004)).

A state that has made the initial custody determination has exclusive, continuing jurisdiction over later disputes. N.J.S.A. 2A:34-66(a). A state has jurisdiction to make an initial child custody determination where it is the child's "home state." N.J.S.A. 2A:34-65(a)(1). "Home state" means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody

proceeding . . . [including a] period of temporary absence[.]" <u>Sajjad</u>, 428 N.J. Super. at 172 (alterations in original) (citing N.J.S.A. 2A:34-54).

> A New Jersey court has initial child custody jurisdiction if it was the child's "home state" when the proceeding commenced, "or was the home state of the child within six months before the" proceeding commenced "and the child is absent from this State but a parent or person acting as a parent continues to live in this State."
>
> [<u>P.H. v. L.W.</u>, 456 N.J. Super. 630, 637 (App. Div. 2018) (quoting N.J.S.A. 2A:34-65(a)(1)).]

Temporary absences will not affect this, but whether the absence is temporary requires consideration and weighing of various factors. <u>Sajjad</u>, 428 N.J. Super. at 173.

If no other state is the home state or the home state has declined to exercise jurisdiction, New Jersey may exercise jurisdiction in certain instances. <u>See</u> N.J.S.A. 2A:34-65(a)(2). Finally, "personal jurisdiction is not required when a court is exercising jurisdiction solely over custody matters, provided that the party is given reasonable notice and opportunity to be heard." <u>Schuyler v. Ashcraft</u>, 293 N.J. Super. 261, 290 (App. Div. 1996) (citing <u>Genoe v. Genoe</u>, 205 N.J. Super. 6, 15 (App. Div. 1985)); <u>see</u> <u>also</u> N.J.S.A. 2A:34-60 and -69.

The order denying reconsideration was based on the conclusion that either state could have home state jurisdiction—even though the child had not resided

continuously in either state for six months—and because of that the Agreement was used to determine the intent of the parties. However, it does not appear the child lived continuously for six months in either state. He was present in both states for significant periods of time, but his situation was unsettled. The court noted both parents considered the child's absences from their state as temporary. There was evidence to support the court's finding the child "lived in both places according to the needs and desires of the parents."

"We recognize that the lack of home-state status does not necessarily divest a state of jurisdiction." P.H., 456 N.J. Super. at 638. A New Jersey court may exercise jurisdiction if no court of another state has home-state jurisdiction, or a court with home-state jurisdiction declines to exercise it, and two other factors are present:

> (a) the child and the child's parents, or the child and at least one parent or a person acting as a parent have a significant connection with this State other than mere physical presence; and
>
> (b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;
>
> [Ibid. (citing N.J.S.A. 2A:34-65(a)(2)).]

Thus, in this case, "the court . . . could have grounded New Jersey jurisdiction on the basis of the 'significant connection' and 'substantial evidence' tests." Ibid.

Here, however, the Family Part judge anchored its decision to the Agreement, finding it reflected the parties' intent about custody.

It was an error to rely on the Agreement to determine custody. An "agreement of the parties as to which state should assume jurisdiction" is a factor for a court to consider if declining jurisdiction because it is an inconvenient forum, but it is not dispositive of jurisdiction. See Griffith, 394 N.J. Super. at 137 (providing that subject matter jurisdiction was not determined by the parties' agreement to designate New Jersey as the child's home state); B.G. v. L.H., 450 N.J. Super. 438, 457 (Ch. Div. 2017) (providing an agreement cannot "bind" the courts but should be given weight if supported by "valuable consideration").

We reverse and remand for a hearing on whether there was "significant connection" with this State or Virginia and whether there is "substantial evidence" in this State or Virginia concerning the child's care, protection, training and personal relationships as of the period from his birth to prior to April 11, 2018, when the Family Part issued the first order. Where there is no home state under the UCCJEA, the Family Part should have looked to these factors to determine whether New Jersey had jurisdiction to issue a custody order. See P.H., 456 N.J. Super. at 638.

The Family Part considered the Agreement, but there was no consideration of the nature and quality of connections to each state. The parties were focused on counting the days the child was present in one state or the other. Although the Agreement might warrant some consideration on remand, it is not entitled to substantial weight unless it was supported by "valuable consideration." B.G., 450 N.J. Super. at 457-58. There was no discussion of the consideration received by defendant for her agreement.

The decision to reverse the May 29, 2019 order and to remand for a hearing obviates our need to address other issues raised by defendant, so we add these brief comments.

Defendant argues the Family Part did not have personal jurisdiction for the orders that were entered. The UCCJEA expressly provides, however, that "[p]hysical presence of, or personal jurisdiction over, a party or a child is neither necessary nor sufficient to make a child custody determination." N.J.S.A. 2A:34-65(c). We note Virginia's version of the uniform law contains the same provision. See Va. Code Ann. § 20-146.12(C)(2020) (providing "[p]hysical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination").

Furthermore, the UCCJEA "governs the determination of subject matter jurisdiction in interstate, as well as international, custody disputes." Sajjad, 428 N.J. Super. at 170. The same is true for Virginia. See Va. Code Ann. §§20-146.1 to 20-146.38 (2020).

Defendant argues N.J.S.A. 2A:34-65(c) is unconstitutional. This argument was not raised in the Family Part proceedings. Generally, we will not consider issues, even constitutional ones, which were not raised below. Nieder v. Royal Indemn. Ins. Co., 62 N.J. 229, 234 (1973). Both Virginia and New Jersey have similar laws. Were the provision to be held unconstitutional, it would undermine the purpose of the UCCJEA "'to avoid jurisdictional competition and conflict' between jurisdictions in favor of 'cooperation with courts of other states.'" Sajjad, 428 N.J. Super. at 170-71 (quoting Griffith, 394 N.J. Super. at 138). We decline to address this issue in this appeal.

Defendant alleges she was not accorded adequate notice in April 2018. Plaintiff commenced this case by order to show cause. See R. 4:52-1(a). "The rule permits judicial review absent compulsory notice 'if it appears from specific facts shown by affidavit or verified complaint that immediate and irreparable damage will probably result to the plaintiff before notice can be served or informally given and a hearing had thereon.'" In re Adoption of Child ex rel.

M.E.B., 444 N.J. Super. 83, 89-90 (App. Div. 2016) (quoting R. 4:52–1(a)); see R. 5:1-1. (stating that "[c]ivil family actions shall also be governed by the rules in Part IV insofar as applicable and except as otherwise provided by the rules in Part V"). Although defendant alleged she was not served with all the supporting papers, the court's order identified the issues, and she addressed them in her written submission to the court on April 16 and in oral argument on April 18, 2018. She had all submissions well before the January 2019 hearing.

Plaintiff argues defendant is precluded from relief because she did not appeal or ask for reconsideration from the April 2018 orders. We discern no procedural impediment. The April 18, 2018 order awarded plaintiff "temporary sole legal and residential custody." The May 2018 order addressed paternity and parenting time. The January 2019 order continued the custody arrangement. Defendant's motion for reconsideration was decided in May 2019 and defendant appealed that order.

Reversed and remanded for a hearing on the child's "significant connection" with this State or Virginia and whether there was "substantial evidence" in this State or Virginia concerning the child's care, protection, training and personal relationships contacts from his birth to April 11, 2018. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18