**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3658-21

GREGORY BATTLE,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

HANNAH ALGEE,

      Defendant-Appellant/
      Cross-Respondent.

_____

Submitted November 28, 2023 – Decided January 10, 2024

Before Judges Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FD-09-0107-22.

Dario, Albert, Metz, Eyerman, Canda, Concannon, Ortiz & Krouse, attorneys for appellant/cross-respondent (Shelley D. Albert and Paul Joseph Concannon, on the briefs).

Einhorn, Barbarito, Frost Botwinick, attorneys for respondent/cross-appellant (Kristi Lynn Terranova,

Jessica R. Sciara, Matheu D. Nunn and Bonnie C. Frost,
on the briefs).

PER CURIAM

Defendant Hannah Algee appeals from a June 15, 2022 Family Part order granting plaintiff Gregory Battle's motion to register and enforce multiple orders under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-54 to -95. Plaintiff cross-appeals from the June 15 order, arguing the trial court mistakenly neglected to address his request for an award of counsel fees and costs against defendant. We affirm the challenged order as to the appeal, and remand for further proceedings as to the cross-appeal.

I.

The parties previously dated and have a son together. The child was born in Pennsylvania in 2010 and is diagnosed with various learning disabilities.

When the parties' relationship ended in 2012, plaintiff moved to Jersey City and defendant remained in Philadelphia with the child. Pursuant to a July 12, 2012 consent order (CO) entered in the Court of Common Pleas of Philadelphia County, Pennsylvania, the parties agreed to share joint legal custody of their son, with defendant remaining the child's primary caretaker and plaintiff having parenting time on alternating weekends and on Sundays when he did not have the child for a full weekend. The CO also provided plaintiff

2

with "reasonable additional visitation during the week," and holiday and vacation time. Under the CO, plaintiff was solely "responsible for picking the child up and dropping him off at [defendant]'s house" during parenting time exchanges. Over the next several years, plaintiff exercised parenting time in New Jersey and transported the child for visits, consistent with the terms of the CO.

In 2019, defendant, a Canadian citizen, filed a motion in Pennsylvania, seeking permission to relocate to Canada with the parties' son. Plaintiff opposed the motion. Following a virtual trial, the judge granted defendant's relocation application and entered a conforming order on July 27, 2020.

The July 27, 2020 order directed the parties to continue sharing legal custody of their son, with defendant "retain[ing] primary physical custody of the child." The order also awarded plaintiff "partial physical custody" and parenting time for six weeks during the summer, plus alternating spring and winter school breaks, additional "reasonable visitation" in Canada on notice to defendant, and "any other times the parties mutually agree[d] to." Moreover, the order granted plaintiff the right to daily electronic or telephonic contact with the child. Finally, the July 27 order stated the Pennsylvania courts "relinquishe[d] jurisdiction of th[e] matter to the judicial county in which father resides."

3

In a written opinion accompanying the July 27 order, the judge explained she granted defendant's relocation motion, in part, because most of defendant's extended family lived in Canada. Further, the judge found "[n]o contempt petitions for failure to comply with the [parties' CO] ha[d] been filed since it went into effect." The judge also noted that although the parties recently argued over defendant's "decision to withhold the child from [plaintiff], this was due solely to the current pandemic and th[e fact plaintiff wa]s residing in an area which had a high rate of COVID-19 cases." Accordingly, the judge found defendant's "conduct d[id] not support a finding that she would withhold the child from [plaintiff] in the future."

On plaintiff's motion to reconsider the July 27 order, the judge entered an amend order on August 12, 2020, prohibiting plaintiff from "exercis[ing] his custodial time during the one . . . week prior to [the] child's school year commencing in Canada." The August 12 order also stated plaintiff was entitled to overnights in Canada "as [the] parties mutually agree" "upon providing [defendant] at least seven . . . days written notice of a planned visit," and that "[a]ll other terms of the July 27, 2020 order not revised by this order remain[ed] in effect." Neither party appealed from the July 27 or August 12 orders.

4

Defendant promptly relocated to Canada with the parties' son following the relocation hearing. Plaintiff refrained from exercising his holiday and school recess parenting time for the balance of 2020 and into 2021, due to the ongoing pandemic. However, starting in March 2021, plaintiff emailed defendant he wished to exercise parenting time in Canada and enjoy six weeks of parenting time in New Jersey that summer, consistent with the July 27, and August 12, 2020 orders. Defendant responded to plaintiff in April 2021, stating it was not "safe for [the parties' son] to be travel[]ing to the [United States], let alone to the North Jersey/New York City area this summer," due to the pandemic, and asked plaintiff to "reconsider [his] plans for this summer . . . to keep [the child] safe."

The following month, defendant's attorney notified plaintiff that defendant would not permit the parties' child "to travel to the United States" for plaintiff's summer parenting time, "due to the serious health and safety concerns related to the COVID-19 pandemic." Defendant's counsel proposed that plaintiff instead exercise six weeks of summer parenting time in Canada after self-isolating for fourteen days, consistent with the requirements in defendant's province. Lastly, defendant's attorney informed plaintiff that because the

parties' child was "now habitually resid[ing] in [Canada], the Court of Queen's Bench . . . would have jurisdiction over this matter."

Twice in June 2021, counsel for plaintiff wrote to defendant's attorney, reiterating plaintiff's request that defendant comply with the July 27, and August 12, 2020 orders, and allow plaintiff six weeks of summer parenting time in New Jersey. Because defendant did not agree to these requests, in July 2021, plaintiff filed a verified complaint and order to show cause (OTSC) in New Jersey to enforce the July 27, and August 12, 2020 orders. He also sought reimbursement for all "travel costs and fees incurred to transport the child to and from parenting time," make-up parenting time, sanctions, a transfer of the child's physical custody "if [defendant] continue[d] to interfere with [his] custody and parenting time" and an award of counsel fees and costs. Additionally, plaintiff filed a notice to register and enforce the following Pennsylvania orders: the July 10, 2012 CO; a July 22, 2020 order granting plaintiff's request for the parties' son to undergo certain evaluations at plaintiff's cost; and the July 27, and August 12, 2020 orders granting defendant's relocation application, subject to plaintiff's parenting time (collectively Pennsylvania orders).

On July 26, 2021, defendant moved for dismissal of plaintiff's complaint due to a lack of jurisdiction. Alternatively, she sought dismissal under the

6

doctrine of forum non conveniens. Also, barring dismissal of plaintiff's complaint, defendant asked the trial court to deny his OTSC.

Following virtual argument on the parties' cross-applications on July 27, 2021, the motion judge granted the OTSC, finding New Jersey had jurisdiction to address the matter based on "the emergent nature of the application." Noting neither party appealed from the July 27, or August 12, 2020 orders, and both orders allowed "the case [to] now move over to New Jersey," the judge found New Jersey could exercise emergency jurisdiction to address the parties' custody and parenting time issues. She concluded, "if there's no parenting time[,] then in some respects[, an] argument[] can be made that there's an interference with custody. And therefore, there are emergent aspects [to] this" application. The judge added, "[t]hese extended periods of time where one parent is really out of the picture . . . does lead to a deterioration of the relationship between parent and child. . . . [W]e've got to take steps . . . to reestablish the bond."

However, the judge also stated that because "COVID [wa]s . . . rising up again," the child was due to start school soon, and he should "be home in time to get everything on board for the start of school," she would not permit plaintiff to exercise six weeks of parenting time that summer. Thus, the judge ordered

7

the parties to attempt to agree on a start and end date for plaintiff's summer parenting time before returning to court two days later.

By the time the parties virtually appeared in court with counsel on July 29, 2021, they agreed plaintiff's parenting time would commence on August 7, 2021. But they could not agree on when the child should return to Canada, in part, because defendant represented the child required certain "in-home" training in August.

The judge found defendant "made an arbitrary decision . . . to cancel parenting time for [plaintiff] over the summer," and ordered defendant to produce the child for plaintiff's parenting time in New Jersey from August 7 to August 28, 2021. The judge also directed the parties to "cooperate with each other" and "work[] out [the child's] technology training remotely" so he could receive any necessary training while in New Jersey.

The judge entered a conforming order on July 30, 2021. The order also directed any remaining non-emergent issues would be decided on October 1, 2021, after counsel briefed those issues. Neither party appealed from the July 30 order.

In September 2021, plaintiff filed a child support action in Canada. The parties resolved this action four months later by entering into and filing a

A-3658-21

consent order with the Court of Queen's Bench in Canada. In the interim, the October 1, 2021 hearing in New Jersey was postponed to March 2, 2022. Prior to the March 2 hearing, plaintiff filed an additional certification with the court, alleging defendant continued to unreasonably limit his parenting time. He also reiterated his demand for a counsel fee award.

A judge newly assigned to the New Jersey case heard argument from counsel on March 2 and reserved decision. On June 15, 2022, he issued an order granting plaintiff's request to register and enforce the Pennsylvania orders, and specifically granted plaintiff's request to enforce the July 27, 2020 order "as to [plaintiff's] summer parenting time."[1] Further, the judge directed defendant to make the child available to plaintiff pursuant to the terms of the July 27, 2020 order or face sanctions and fees. Finally, the judge denied plaintiff's request to modify the existing custody and parenting time arrangement, finding New Jersey "lack[ed] jurisdiction to" do so under N.J.S.A. 2A:34-80,[2] and, because New

_____

[1] In a second order also dated June 15, 2022, the judge denied the balance of plaintiff's OTSC as moot and concluded "[n]o further hearing was necessary." Neither party challenges the denial of emergent relief under this second order.

[2] N.J.S.A. 2A:34-80(b) states, "[a] court of this State <u>shall recognize and enforce, but may not modify</u>, except in accordance with article 2 of this act, a registered child custody determination of another state." (Emphasis added).

Jersey was "an inconvenient forum for addressing the issue of custody and parenting time under N.J.S.A. 2A:34-71."[3]

In a written opinion accompanying the June 15, 2022 order, the judge determined he had personal jurisdiction over defendant because she had "sufficient contacts" with New Jersey. He reasoned the parties "exercised joint legal custody while [p]laintiff resided in New Jersey" and plaintiff exercised parenting time in New Jersey with the parties' son "over several years." Further, the judge noted neither party appealed from the July 27, 2020 order, which "specifically provided that parenting time would continue in the State of New Jersey, and that jurisdiction would remain with New Jersey." The judge added, "[w]hile this [c]ourt is not bound by Pennsylvania's assignment of custody[,] . . . [it] does find . . . [d]efendant had minimum contacts with New Jersey such that she could reasonably anticipate being called into court in this state."

---

[3] N.J.S.A. 2A:34-71(a) provides, in part:

> A court of this State that has jurisdiction under this act to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.

A-3658-21

Significantly, the judge also found New Jersey had jurisdiction to enforce the Pennsylvania orders pursuant to N.J.S.A. 2A:34-77.[4] After reminding the parties the July 27, 2020 order "permit[ted d]efendant to relocate to Canada with the parties' minor child, establishe[d] custody, and set[] forth a parenting time schedule for [p]laintiff," the judge explained that when the July 27 order was entered:

> The Pennsylvania court exercised its jurisdiction in substantial conformity with [UCCJEA], as Pennsylvania was the ["]home state["5] of the minor child at the time the [o]rder was entered. This [c]ourt is therefore bound to enforce the Pennsylvania [o]rders. Under the terms of the [July 27, 2020 o]rder, [p]laintiff is entitled to summer parenting time with the minor

---

[4] N.J.S.A. 2A:34-77 provides, in part:

> a. A court of this State shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this act or the determination was made under factual circumstances meeting the jurisdictional standards of this act and the determination has not been modified in accordance with this act.

> b. A court of this State may utilize any remedy available under other law of this State to enforce a child custody determination made by a court of another state.

[5] The "home state" is defined as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." N.J.S.A. 2A:34-54.

11

child. Although there is currently litigation between the parties regarding modification of the [July 27, 2020 o]rder, [it] has not been modified and remains in place.

Finally, citing N.J.S.A. 2A:34-80 and N.J.S.A. 2A:34-67,[6] the judge concluded "New Jersey [wa]s an inconvenient forum for purposes of modifying the [July 27, 2020 o]rder," whereas "[t]he . . . Court [in Canada wa]s the proper forum to address modification of the [o]rder." In reaching this conclusion, the judge found New Jersey did not have "substantial evidence . . . concerning the child's care, protection, training[,] and personal relationships," consistent with N.J.S.A. 2A:34-67(2)(b).

Further, the judge concluded even if substantial evidence about the child was available in New Jersey, he "would nevertheless find . . . New Jersey [wa]s an inconvenient forum for determining custody," pursuant to the factors set forth under N.J.S.A. 2A:34-71(b),[7] each of which he addressed. Accordingly, the

---

[6] N.J.S.A. 2A:34-67 states, "a court of this State may not modify a child custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection [(a)] of" N.J.S.A. 2A:34-65.

[7] Those factors are:

> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

judge concluded he had "the authority to enforce the Pennsylvania [o]rders[,] . . . [but] d[id] not have the authority to modify" them because "Canada [wa]s the appropriate jurisdiction for modification of the Pennsylvania [o]rders."  Therefore, the judge denied defendant's motion to dismiss and her request for fees, and granted in part, and denied in part, plaintiff's remaining

(2) the length of time the child has resided outside this State;

(3) the distance between the court in this State and the court in the state that would assume jurisdiction;

(4) the relative financial circumstances of the parties;

(5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues of the pending litigation.

[N.J.S.A. 2A:34-71(b).]

13

requests for relief without addressing plaintiff's request for counsel fees and costs.

## II.

On appeal, defendant presents four overlapping arguments for our consideration. She contends the judge erred in: (1) denying her motion to dismiss plaintiff's complaint despite New Jersey's "lack of jurisdiction"; (2) denying her motion to dismiss despite New Jersey's "lack of personal jurisdiction over" her; (3) registering and enforcing the Pennsylvania orders over her objection; and (4) enforcing the custody and parenting time provisions of the Pennsylvania orders against her, despite the fact New Jersey "lacked personal jurisdiction." In support of her jurisdictional arguments, defendant points to the fact that on September 6, 2022, the parties entered into a consent order partially resolving issues the parties raised before the Court of Queen's Bench in Canada. In his cross-appeal, plaintiff solely argues the judge "erred in failing to address or make findings of fact and conclusions of law regarding [his] request for counsel fees."

We begin with the principles that govern our analysis. As a threshold matter, we do not consider evidence which was not presented to the trial court. See Townsend v. Pierre, 221 N.J. 36, 45 n.2 (2015). Therefore, we do not

14

consider the September 6, 2022 order entered in Canada months after the entry of the challenged June 15, 2022 order.

Next, we recognize "appeals are taken from orders and judgments," rather than opinions. Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001). Thus, "[a] trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning." Hayes v. Delamotte, 231 N.J. 373, 387 (2018).

Additionally, it is well settled that we accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters," N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). However, our review of the Family Part's interpretation of the law is de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012). Accordingly, jurisdictional questions in interstate child custody disputes are reviewed de novo. See Sajjad v. Cheema, 428 N.J. Super. 160, 170 (App. Div. 2012).

"The UCCJEA governs the determination of subject matter jurisdiction in interstate . . . custody disputes." Ibid. (citing Greely v. Greely, 194 N.J. 168, 178 (2008)). It serves to "ensure that custody determinations are made in the

A-3658-21

state that can best decide the case." Griffith v. Tressel, 394 N.J. Super. 128, 138 (App. Div. 2007). The UCCJEA was enacted "'to avoid jurisdictional competition and conflict' between jurisdictions in favor of 'cooperation with courts of other states.'" Sajjad, 428 N.J. Super. at 170-71 (quoting Griffith, 394 N.J. Super. at 138). Accordingly, to address a multi-state child custody issue, a Family Part must follow the procedures set forth in the UCCJEA. Id. at 171 (citing Poluhovich v. Pellerano, 373 N.J. Super. 319, 357 (App. Div. 2004)).

The UCCJEA typically "prioritizes the use of the child's 'home state,' as the exclusive basis for jurisdiction of a custody determination, regardless of the residency of the parents." Ibid. (citing Dalessio v. Gallagher, 414 N.J. Super. 18, 26 (App. Div. 2010)). However, even if New Jersey is not the "home state," it may still exercise temporary emergency jurisdiction under N.J.S.A. 2A:34-68. To exercise temporary emergency jurisdiction under this statute, the child must have been abandoned or "subjected to or threatened with mistreatment or abuse." N.J.S.A. 2A:34-68(a).

"New Jersey's adoption of the []UCCJEA created a full-throated obligation on our courts to not only recognize, but also enforce foreign orders." H.V.D.M. v. R.W., 466 N.J. Super. 227, 239 (App. Div. 2021). "Also, pursuant to N.J.S.A. 2A:34-87, New Jersey 'shall accord full faith and credit' to the

16

foreign order." Ibid.  Moreover, under the UCCJEA,

> [a] court of this State which does not have jurisdiction to modify a child custody determination[8] may issue a temporary order enforcing:
>
>> (1) a visitation schedule made by a court of another state; or
>>
>> (2) the visitation provisions of a child custody determination of another state that does not provide for a specific visitation schedule.
>
> [N.J.S.A. 2A:34-78(a).]

The UCCJEA also authorizes New Jersey to register a foreign custody determination.  N.J.S.A. 2A:34-79.  The registration process outlined under N.J.S.A. 2A:34-79 includes sending a certified copy of the child custody determination to the Superior Court of New Jersey.  Pursuant to N.J.S.A. 2A:34-79, "[a] child custody determination issued by a court of another state may be registered in [New Jersey], with or without a simultaneous request for enforcement." Ibid.

As mentioned, pursuant to N.J.S.A. 2A:34-77, New Jersey must

---

[8]  A "child custody determination" is any "judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child.  The term includes a permanent, temporary, initial[,] and modification order."  N.J.S.A. 2A:34-54.

17

"recognize and enforce a child custody determination . . . of another state if the latter court exercised jurisdiction in substantial conformity with [the UCCJEA] or the determination was made under factual circumstances meeting the jurisdictional standards . . . and the determination has not been modified in accordance with this act." N.J.S.A. 2A:34-77(a). New Jersey courts also "may utilize any remedy available" under our laws "to enforce a child custody determination" from another state. N.J.S.A. 2A:34-77(b). Yet a New Jersey court "may not modify a child custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination," N.J.S.A. 2A:34-67, under one of the scenarios outlined under N.J.S.A. 2A:34-65, none of which apply here.[9]

---

[9] Pursuant to N.J.S.A. 2A:34-65:

> [A] court of this State has jurisdiction to make an initial child custody determination only if:
>
> (1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>
> (2) a court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the

A-3658-21

Lastly, it is well settled that a trial court's decision to grant or deny attorney's fees in a family action will be disturbed "only on the 'rarest occasion,' and then only because of a clear abuse of discretion."  Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).  To permit a trial court to determine the reasonableness of a

---

home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under section 19 or 20 . . . of this act and:

> (a) the child and the child's parents, or the child and at least one parent or a person acting as a parent have a significant connection with this State other than mere physical presence; and

> (b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) of this subsection have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under section 19 or 20 of this act; or

(4) no state would have jurisdiction under paragraph (1), (2) or (3) of this subsection.

[N.J.S.A. 2A:34-65(a).]

fee application, "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." Slutsky v. Slutsky, 451 N.J. Super. 332, 366 (App. Div. 2017) (quoting R. 4:42-9(b)).

In determining whether and to what extent a counsel fee award is appropriate, the court must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [R. 5:3-5(c).]

Additionally, when calculating a fee award, a court must determine the reasonableness of the rates proposed by prevailing counsel and the reasonableness of the time spent. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004) (citing Rendine, 141 N.J. at 335-36).

We also note the UCCJEA provides for an award of counsel fees and costs to a prevailing party. N.J.S.A. 2A:34-86. Pursuant to that statute, a trial court:

shall award the prevailing party, . . . necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and childcare during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

[N.J.S.A. 2A:34-86(a).]

Governed by these standards, we discern no basis to disturb the June 15, 2022 order as to defendant's appeal. Instead, we agree with the Family Part judge issuing the June 15 order that he was "bound to enforce the Pennsylvania [o]rders," pursuant to the UCCJEA. Similarly, although neither party appealed from the July 30, 2021 order entered in New Jersey, we are persuaded the judge issuing that order also correctly enforced the July 27, and August 12, 2020 orders from Pennsylvania, and directed defendant to make the parties' child available for plaintiff's summer parenting time in New Jersey—albeit for an abbreviated period, due to the judge's concerns about rising rates of COVID-19 and the child's need to be ready for the upcoming school year.

Thus, because the Family Part judges in New Jersey were bound under N.J.S.A. 2A:34-77 to enforce the child custody determinations issued in Pennsylvania and were also authorized under N.J.S.A. 2A:34-78 to issue temporary orders enforcing the parenting time schedule set forth in the July 27,

21

and August 12, 2020 orders, defendant's challenges to the June 15, 2022 order fail. Accordingly, there is no need to further address her jurisdictional arguments, including the argument she lacked "the requisite 'minimum contacts'" in New Jersey for this State to "to exercise [their] coercive power over [her] to perform an affirmative act." Likewise, her contention that plaintiff failed to properly register the Pennsylvania orders is of no moment, considering New Jersey courts unquestionably had the power to enforce the Pennsylvania orders at issue, whether or not plaintiff sought to register those orders.

Finally, as to the cross-appeal, we are constrained to agree with plaintiff that the trial court failed to squarely address his fee application. Thus, we are compelled to remand this matter for the judge to consider in the first instance whether an award of counsel fees and costs is warranted, and to make findings of fact and conclusions of law with respect thereto. R. 1:7-4. We offer no opinion on whether plaintiff provided sufficient proofs to justify such an award.

To the extent we have not addressed the parties' remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3658-21